Plaintiffs should submit a proposed order for settlement on 10–days notice.[13]

### UNITED STATES of America
### v.
### James GRIBBEN and Carlos Maldonado, Defendants.

### No. S91 Cr. 0995 (KTD).

United States District Court, S.D. New York.

May 21, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Steven A. Standiford, Asst. U.S. Atty., of counsel), New York City, for U.S.

Stuart London, Rye Brook, N.Y., for defendant James Gribben.

Hession, Bekoff & Worth (Stephen C. Worth, of counsel), Mineola, N.Y., for defendant Carlos Maldonado.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendants James Gribben and Carlos Maldonado, New York City Police Officers assigned to the 43rd Precinct, move pursuant to Fed.R.Crim.P. 12 for dismissal of Indictment S 91 Cr. 995 (KTD) against them.[1] The indictment charges both defendants with conspiracy to violate 18 U.S.C. §§ 1001 and 1623 (Count 1).[2] It charges Gribben with one count of violating 18 U.S.C. § 1001 (Count 2) and two counts of violating 18 U.S.C. § 1623 (Counts 3 and 6). The indictment charges Maldonado with two separate violations of 18 U.S.C. § 1001 (Counts 4 and 5).

---

1. On February 19, 1992, Officer Maldonado filed his motion to dismiss. I subsequently granted Officer Gribben's oral request to join in Maldonado's motion. *See* Minutes dated 3/23/92.

2. 18 U.S.C. § 1001 provides: "[w]hoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations ... shall be fined not more than $10,000 or imprisoned not more than five years, or both."

## FACTS

The facts set forth here are based largely on facts set forth in Indictment S 91 Cr. 995 (KTD) and the Affidavit of Assistant United States Attorney Cari Robinson ("AUSA Robinson"). On May 17, 1991, Officers Gribben and Maldonado responded to a call for assistance concerning a domestic dispute involving a gun at a condominium. Security guards employed by the condominium accompanied both officers to the apartment where the dispute occurred. In the hallway outside the apartment, Officers Gribben and Maldonado, with the assistance of the security guards, arrested Lindsey Calhoun. In the course of that arrest, one of the security guards recovered a Smith & Wesson .38 caliber handgun from a leather bag that Lindsey Calhoun had been carrying. In two police reports dated the day of the arrest, however, Officer Gribben indicated that he seized the handgun from Calhoun's waistband.[3]

On June 6, 1991, Officer Gribben met with AUSA Robinson in her office and advised her that during the May 17, 1991 incident, he had seized a handgun from Calhoun's waistband. Based on Officer Gribben's representations, AUSA Robinson drafted a Magistrates' Complaint charging Calhoun with illegal possession of a handgun in violation of 18 U.S.C. § 922(g)(1). On June 6, 1991, Officer Gribben appeared before Magistrate Judge Leonard I. Bernikow and, under oath, swore that the statements contained in the Magistrate's Complaint, including the following statement, were true:

Officer Maldonado and I asked in substance and part what the disturbance

---

18 U.S.C. § 1623 provides: "[w]hoever under oath ... in any proceeding before ... [a] grand jury of the United States knowingly makes any false material declaration ... shall be fined not more than $10,000 or imprisoned not more than five years, or both."

3. In a Stop and Frisk Report Officer Gribben wrote: "I stopped him [Calhoun] from going into his waist and searched that area and found a gun." In a Complaint Report, Officer Gribben wrote: "perp[etrator] became loud and abusive and made a move toward his waist at this point a search was made of the perp and a .38 cal. revolver (S. and W.) was recovered."

was, at which time Lindsey Calhoun, the defendant, became agitated and began to reach for his waist. I then frisked the area around defendant's waist, and recovered a Smith and Wesson .38 revolver, bearing serial number 403328, which was loaded with two rounds of ammunition.

Two weeks later, on June 19, 1991, Officer Maldonado met with AUSA Robinson at her office and told her that, at the time the handgun was retrieved on May 17, 1991, he was standing in front of, and facing, the door to Apartment 6H speaking to complaining witness Pamela Gordon, who was behind the apartment door. Officer Maldonado further stated that Officer Gribben was standing behind him guarding Calhoun, who had been temporarily detained. Officer Maldonado advised AUSA Robinson that when he heard Officer Gribben gasp and say something, Maldonado turned around and saw that Officer Gribben was standing next to Calhoun holding the handgun. Officer Maldonado further stated that because his back was turned away from Officer Gribben and Lindsey Calhoun, he (Maldonado) did not see who retrieved the handgun or from where it was retrieved.

On June 21, 1991, Officer Gribben appeared as a witness in connection with the investigation before the June 1991 Regular Grand Jury, in the Southern District of New York. Gribben testified, in part, as follows:

Q: Describe what happened then.

A: Me and my partner entered the building and took the elevator up to the 6th floor. When the elevator opened up there was a black male standing in front of us. I then asked him, did he come from the apartment 6H, and he said yes. So I asked him questions to see what the problem was. At that time he became very agitated and irrational, and went to his waist.

Q: Based upon your experience as a police officer, what did you think he was doing?

A: I thought he might be reaching for a weapon.

Q: What did you do?

A: I placed him in a search position and searched that part of his waist and recovered a revolver.

At a July 23, 1991 bail hearing for Calhoun held before United States District Judge John S. Martin, Calhoun's counsel represented that the handgun had not been seized from Calhoun's waistband, as recited in the Complaint, but from a black bag that Calhoun had been carrying.

On August 23, 1991, AUSA Robinson interviewed Officer Maldonado again. In essence, he restated the story he had previously told her: that he did not see where the gun had been retrieved from or who had retrieved it. Upon interviewing the condominium security guards present during the incident, the Government learned that the handgun was retrieved by a security guard from a bag previously carried by Calhoun and that the security guard had retrieved the handgun in the presence of both Officers Gribben and Maldonado.

Officers Gribben and Maldonado were subsequently indicted. Specifically, Count 1 of the Indictment charges them both with conspiracy to violate 18 U.S.C. Sections 1001 and 1623. Count 2 charges Officer Gribben with concealing and covering up a material fact and making false statements to an AUSA on or about June 6, 1991. Count 3 charges officer Gribben with committing perjury before a United States Magistrate Judge on or about June 6, 1991. Counts 4 and 5 charge Officer Maldonado with concealing or covering up a material fact and making false statements to an AUSA on June 19, 1991 and August 23, 1991, respectively. Count 6 charges Officer Gribben with committing perjury before the grand jury on June 21, 1991.

There are no allegations that either Gribben or Maldonado intentionally perjured himself or gave false statements for a corrupt purpose; that is, that either was bribed by Calhoun or another to intentionally falsify the facts of Calhoun's arrest.

## DISCUSSION

Maldonado makes three arguments in support of his motion to dismiss. First, he

■ 963

argues that Counts 4 and 5 should be dismissed because the statements he and his co-defendant made were not "material" within the meaning of the false statements statute, 18 U.S.C. § 1001, and the perjury statute, 18 U.S.C. § 1623. Second, he argues that Counts 4 and 5 should be dismissed as to him because the "exculpatory no" doctrine is a complete defense. Third, relying on his first argument, Maldonado asserts that the conspiracy charged in Count 1 should be dismissed because the allegedly false statements charged as overt acts are not "material."

Officer Gribben joins in the above arguments as they pertain to him. Thus, he contends that because the alleged misstatements were not material under sections 1001 and 1623, Counts 2, 3 and 6 (the substantive counts) and Count 1 (the underlying conspiracy count) should be dismissed.

It is firmly established that materiality is an element of an offense under 18 U.S.C. Section 1623. *See, e.g., United States v. Moon,* 718 F.2d 1210, 1237 (2d Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). However, in this Circuit, while materiality is an essential element of the first clause of 18 U.S.C. Section 1001, it is not an element of the second clause.[4] *See United States v. Marchisio,* 344 F.2d 653, 666 (1965) ("Materiality ... is not one of the essential elements of proof in a prosecution for false statements under § 1001, with the exception of the first clause of the statute"); *see also U.S. v. Bilzerian,* 926 F.2d 1285, 1299 (2d Cir.1991) ("Under our decisions, materiality of the statement is not an element of the offense [of making a false statement under Section 1001]"), *cert. denied,* — U.S. —, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991); *United States v. Elkin,* 731 F.2d 1005, 1009 (2d Cir.) ("[i]t is settled in this Circuit that

materiality is not an element of the offense of making a false statement in violation of § 1001"), *cert. denied,* 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984). Because the indictment charges Gribben and Maldonado under both clauses of Section 1001, I must analyze the charges under the different standards appropriate to each.

Both 18 U.S.C. § 1623 and the first clause of 18 U.S.C. § 1001 proscribe the making or covering up of a "material" false statement. Thus, a false statement which is not material cannot support a prosecution under either of these provisions. The issue of whether a false statement is material is a question of law to be determined by the court. *See, e.g., United States v. Moon,* 718 F.2d at 1237; *United States v. Elkin,* 731 F.2d at 1009. Moreover, the government bears the burden of proving materiality by a preponderance of the evidence. *United States v. Cunningham,* 723 F.2d 217, 226 (2d Cir.1983), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984).

The Second Circuit has explained the test for determining materiality as follows:

> Materiality is thus demonstrated if the question posed is such that a truthful answer could help the inquiry, or a false response hinder it, and these effects are weighed in terms of potentiality rather than probability. Thus, in applying this gauge to specific situations, it is only the question, at the time of its asking, which is considered.

*United States v. Moon,* 718 F.2d at 1237; *see also United States v. Berardi,* 629 F.2d 723 (2d Cir.), *cert. denied,* 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980).[5]

The government has simply not met its burden of demonstrating materiality. It does nothing more than conclude that "[h]ad Gribben and Maldonado told the

---

**4.** The first clause prohibits "knowingly and wilfully falsify[ing], conceal[ing] or cover[ing] up by any trick, scheme, or device a material fact." The second clause prohibits "mak[ing] any false, fictitious or fraudulent statements or representations." See *supra* note 2.

**5.** *Cf. United States v. Guariglia,* 962 F.2d 160 (2d Cir.1992) (recognizing that, in actions under 18

U.S.C. § 1623, Circuit has applied two different tests for determining materiality of false statement given in investigative proceeding, as opposed to one given before a grand jury; noting that cases "cast serious doubt on whether the two tests function differently as a practical matter").

truth about the search and seizure, it clearly 'could have helped the inquiry.'" Government's Memorandum at 12. The Government argues: "[a]lthough a person might reasonably defend himself against a charge of illegally possessing a handgun by claiming he did not know he was carrying one inside a bulky bag, it is unpersuasive to make the same argument concerning a handgun hidden in one's waistband." Government's Memorandum at 12. This argument is unavailing. Materiality is not determined by hypothesizing what a defendant might argue at trial, but rather whether the alleged misrepresentation "has a natural tendency or was capable of influencing, the decision *of the decision-making body to which it is addressed.*" *Kingys v. United States*, 485 U.S. 759, 770, 108 S.Ct. 1537, 1546, 99 L.Ed.2d 839 (1988) (citation omitted; emphasis added).

The alleged false statements at issue concern where the gun was recovered from and who recovered it. The statements concerning the precise location of the gun on Calhoun were not material to either the grand jury or the United States Attorney's Office in charging Calhoun. Would it have made a difference to the decision making body if the gun had been in an ankle holster rather than in Calhoun's waistband? Clearly, the answer is no. So also it would appear that whether the possession of the gun was in the bag or in the waistband was totally inconsequential to the charges brought by the decision making body. As the charge against Calhoun would not have been any different had the officers' testimony been as the Government alleges it should have been, I cannot find the alleged false statements material.

Thus, those counts alleging substantive violations of 18 U.S.C. Section 1623 (Counts 3 and 6) must be dismissed. Similarly, those portions of the counts alleging violations of the first clause of 18 U.S.C. Section 1001 (Counts 2, 4 and 5) must be stricken insofar as they allege violations of that clause. As noted above, materiality is not an element of the second clause of Section 1001. Thus, insofar as Counts 2, 4 and 5 allege violations of the second clause of Section 1001, they shall stand.

The conspiracy charge alleges, as the overt acts committed in furtherance of the alleged conspiracy, the very same substantive violations of Sections 1001 and 1623 discussed above. Because I cannot dismiss those counts alleging violations of the second clause of Section 1001, the conspiracy charge (Count 1) must also stand.

For the foregoing reasons, Counts 3 and 6 of the indictment are dismissed. Those portions of Counts 2, 4, and 5 which allege violations of the first clause of 18 U.S.C. § 1001 are dismissed.

SO ORDERED.