**UNITED STATES of America,**
**Respondent–Appellee,**

v.

**John C. MANDANICI, Jr.,**
**Petitioner–Appellant.**

**Docket No. 99–2059.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 1999

Decided Feb. 23, 2000

**521**

Brian E. Spears, Assistant United States Attorney for the District of Connecticut (Stephen C. Robinson, United States Attorney for the District of Connecticut, of counsel), for Respondent–Appellee.

James J. Ruane, Bridgeport, CT, for Petitioner–Appellant.

Before: OAKES, KEARSE and CABRANES, Circuit Judges.

Judge KEARSE concurs in the opinion and judgment of the Court, and files a concurring opinion.

JOSÉ A. CABRANES, Circuit Judge:

■ The principal question presented, as a matter of first impression, is whether the change in the law of this Circuit following *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), to require proof of materiality beyond a reasonable doubt for conviction under 18 U.S.C. § 1001, applies retroactively on col-

lateral review. Petitioner John C. Mandanici, Jr., appeals from a judgment of the United States District Court for the District of Connecticut (Alvin W. Thompson, *Judge* ), entered December 4, 1998, denying his petition for a writ of error *coram nobis.*[1] Judge Thompson held that. *Gaudin* does not apply retroactively insofar as the Supreme Court's decision changed the law to require that materiality be decided by a jury rather than the judge, but he did not address Mandanici's alternative argument concerning the standard of proof required for conviction after *Gaudin.* We hold that this latter change in law does not apply retroactively on collateral review, and therefore affirm the judgment of the District Court.

**I.**

The factual background of this case is described in detail in our opinion on direct appeal, *see United States v. Mandanici,* 729 F.2d 914 (2d Cir.1984), familiarity with which is assumed, and will be repeated here only to the extent necessary.

Mandanici owned an apartment building in Bridgeport, Connecticut, in the early 1980s, for which he sought and received rent subsidy benefits under a program funded by the United States Department of Housing and Urban Development ("HUD"). *See id.* at 915. To participate in the program, Mandanici was required, *inter alia,* to complete and file a number of documents with the Bridgeport Housing Authority, which administered the program locally on behalf of HUD. *See id.* at 915–16. In 1982, Mandanici was indicted by a federal grand jury sitting in the District of Connecticut on three counts of making false statements in these documents, in violation of 18 U.S.C. § 1001,[2] and on a fourth count of making false statements to a federally insured bank, in

---

1. A District Court may issue a writ of error *coram nobis* pursuant to the All Writs Act, which provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or·appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). *See generally United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

2. The version of § 1001 in effect at the time of Mandanici's trial is quoted in the text below.

violation of 18 U.S.C. § 1014.[3] *See Mandanici*, 729 F.2d at 916 & n. 2.

In February and March 1983, Mandanici was tried before a jury, with Judge Robert C. Zampano presiding. When Mandanici was tried, § 1001 provided:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1001 (1976).[4] By its plain terms, the provision established three separate offenses: (1) falsifying, concealing, or covering up by any trick, scheme, or device a material fact; (2) making a false, fictitious, or fraudulent statement; and (3) making or using a false writing or document.[5] A conviction under § 1001 could be sustained if the jury found that the requirements of any one of these three offenses had been met.

At the time of Mandanici's trial, the law in this Circuit was that materiality was an element only of the first offense—namely, falsifying, concealing, or covering up by trick, scheme, or device a *material* fact. *See, e.g., United States v. Marchisio*, 344 F.2d 653, 666 (2d Cir.1965). Materiality in such cases, however, was not an issue to be decided by a jury, but rather an issue to be decided by the judge as a matter of law. *See, e.g., United States v. Gribben*, 984 F.2d 47, 50–51 (2d Cir.1993). A conviction for making false statements or for making or using false writings, on the other hand, did not require any finding of materiality. *See United States v. Elkin*, 731 F.2d 1005, 1009 (2d Cir.1984); *see also United States v. Bilzerian*, 926 F.2d 1285, 1299 (2d Cir. 1991).

Although Mandanici was charged with making false statements, it appears that Judge Zampano believed materiality was an element of the offenses charged, albeit one to be decided by him rather than by the jury.[6] Thus, at the close of Mandanici's trial, Judge Zampano did not instruct

---

**3.** At the time of Mandanici's trial, § 1014 provided in relevant part:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... [any one of several enumerated entities including] any institution the accounts of which are insured by the Federal Deposit Insurance Corporation ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1014 (1976). Congress amended this provision in 1989, 1990, 1994, and 1996. *See* 18 U.S.C.A. § 1014 historical and statutory notes (West Supp.1999). For the purposes of this case, these amendments are not material.

**4.** Congress amended § 1001 slightly in 1994, *see* Pub.L. No. 103–322, § 330016(1)(L), 108 Stat. 2147, 2147 (1994), and enacted a whole-

sale revision in 1996, *see* Pub.L. No. 104–292, § 2, 110 Stat. 3459, 3459 (1996). For the purposes of this case, these amendments are not material.

**5.** Congress's 1996 amendment, *inter alia,* codified these offenses as separate subsections of § 1001. *See* Pub.L. No. 104–292, § 2, 110 Stat. 3459, 3459 (1996) (codified at 18 U.S.C. § 1001).

**6.** Other issues concerning materiality surfaced at trial. At the time of Mandanici's trial, there was a circuit split with respect to whether materiality was an element of making false statements to a federally insured bank in violation of § 1014, *compare, e.g., United States v. Bonnette*, 663 F.2d 495, 497 (4th Cir.1981) (holding that materiality is an element under § 1014), *with United States v. Cleary*, 565 F.2d 43, 46 (2d Cir.1977) (holding that it is not), but it was *not* a required element within this Circuit, *see Cleary*, 565 F.2d at 46. Nevertheless, the parties at Mandanici's trial and Judge Zampano apparently believed that materiality was an element under § 1014, and Judge Zampano charged the jury to that effect with respect to count four.

the jury that it had to find beyond a reasonable doubt that Mandanici's statements were material; instead, Judge Zampano himself made a finding of materiality.[7]

Judge Zampano submitted the case to the jury on March 4, 1983. On the same day, the jury returned a verdict of guilty on all three counts of making false statements in violation of § 1001, and not guilty with respect to the charge under § 1014. On direct appeal, we reversed Mandanici's conviction on one of the three § 1001 counts for insufficiency of the evidence, but affirmed his convictions on the other two, finding that the evidence "amply support[ed]" the charges. *Mandanici*, 729 F.2d at 920; *see id.* at 921. Mandanici served a three-year term of probation and paid a $20,000 fine.

■ In June 1995, the Supreme Court ruled that if materiality is an element under § 1001, a finding of materiality must be made by the jury, rather than by the judge. *See United States v. Gaudin*, 515 U.S. 506, 522–23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The Supreme Court refrained from expressly deciding whether materiality is an element under § 1001,[8] but in *United States v. Ali*, 68 F.3d 1468 (2d Cir.1995), *amended on denial of reh'g*, 86 F.3d 275 (2d Cir.1996), decided four months after *Gaudin*, we overruled our precedents and held that materiality is an element of any and all charges under § 1001. *See id.* at 1474–75. Accordingly, the law in this Circuit now requires that for a conviction under § 1001 to be sustained, the jury must have made a finding of materiality beyond a reasonable doubt.

On November 17, 1995, invoking *Gaudin*, Mandanici filed a petition for a writ of error *coram nobis* to vacate and expunge his convictions.[9] Mandanici alleged that

---

In 1997, the Supreme Court resolved the circuit split on this issue, holding that materiality is not an element under § 1014. *See United States v. Wells*, 519 U.S. 482, 484, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997).

7. Judge Zampano did not explicitly make a finding of materiality on the record. However, the parties agree that he made such a finding. Moreover, during the charging conference, Mandanici's trial counsel objected to an instruction proposed by the Government in which Judge Zampano would have charged the jury that he had found the statements material. Specifically, Mandanici's counsel stated in relevant part:

> I would object to your Honor instructing the jury that you have found the statements to be material. I understand that the law that's in the court, the power to submit or not submit a statement to the jury depending upon whether you determine it to be material or not.... [But notifying the jury that you have made such a determination] may add emphasis where none may be intended by the court, and none should be given.

From this statement, and the surrounding colloquy, it can be inferred that Judge Zampano made a finding of materiality as a matter of law.

Although the parties agree that Judge Zampano decided the question of materiality, they disagree about the standard of proof that he used in doing so. We discuss this issue in further detail below. *See infra* Section II.B.1.

8. The Government in *Gaudin* had conceded that materiality was an element under § 1001. *See* 515 U.S. at 509, 115 S.Ct. 2310. Accordingly, the Supreme Court did not consider the issue. *See id.* at 524, 115 S.Ct. 2310 (Rehnquist, C.J., concurring).

9. This petition is not Mandanici's first attack on his convictions. After his convictions were affirmed on direct appeal, Mandanici filed a motion in April 1984 seeking, *inter alia*, a new trial on the ground that he was prejudiced by nondisclosure of certain documents. Following a four-day hearing, Judge Zampano denied Mandanici's motion, and we affirmed. *See United States v. Mandanici*, Crim. No. 82–1103 (D.Conn. Jan. 18, 1985) (rulings on motion for a new trial, motion to dismiss, and motion for fingerprinting), *aff'd*, 770 F.2d 158 (2d Cir.1985) (table), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 852, 88 L.Ed.2d 892 (1986). In December 1988, Mandanici filed a petition for a writ of error *coram nobis* alleging selective prosecution and nondisclosure of certain documents. Judge Zampano denied the petition, and we affirmed by unpublished order. *See United States v. Mandanici*, Crim. No. 82–1103 (D.Conn. Mar. 8, 1989) (ruling on defendant's petition for writ of *coram nobis*), *aff'd*, No. 89–2142 (2d Cir. Sept. 1, 1989) (unpublished order). Finally, in July 1990, Mandanici filed another petition for a writ of error *coram nobis*, alleging, *inter alia*, selective prosecution, nondisclosure of certain documents, and

his "[c]onstitutional rights to due process and to a jury trial were violated by the trial court's failure to instruct the jury that the government had the burden of proving beyond a reasonable doubt the element of materiality." In an opinion filed December 4, 1998, Judge Thompson denied the petition, relying on our decision in *Bilzerian v. United States*, 127 F.3d 237 (2d Cir.1997), to hold that *Gaudin* does not apply retroactively on collateral review. This timely appeal followed.

## II.

A writ of error *coram nobis* is "essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction." *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir.1998) (per curiam). *Coram nobis* is "not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Foont v. United States*, 93 F.3d 76, 78 (2d Cir.1996) (internal quotation marks and ellipsis omitted); *see Nicks v. United States*, 955 F.2d 161, 167 (2d Cir.1992) (stating that a writ of error *coram nobis* should be granted "only where extraordinary circumstances are present"). In reviewing a petition for the writ, a court must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner. *See Nicks*, 955 F.2d at 167.

To obtain *coram nobis* relief, a petitioner "must demonstrate that '1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier re-

lief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" *Fleming*, 146 F.3d at 90 (quoting *Foont*, 93 F.3d at 79). On appeal, we review *de novo* the question of whether a district judge applied the proper legal standard, but review the judge's ultimate decision to deny the writ for abuse of discretion. *See Fleming*, 146 F.3d at 90.

## A.

As noted, Judge Thompson denied Mandanici's present petition on the ground that *Gaudin* does not apply retroactively on collateral review. In *Gaudin*, the Supreme Court held that if materiality is an element under § 1001, the Fifth and Sixth Amendments require that a jury, not a judge, make the finding. *See* 515 U.S. at 522–23, 115 S.Ct. 2310. Following *Gaudin*, we held in *Ali* that materiality is an element of any and all charges under § 1001. *See* 68 F.3d at 1474–75. Thus, while before *Gaudin* and *Ali* materiality in a prosecution under § 1001 could have been decided by the judge, or not at all (if materiality was not an element), now the issue is reserved for the jury in all cases.

In *Bilzerian*, we confronted the question of whether *Gaudin* and/or *Ali* applies retroactively on collateral review. Bilzerian had been convicted in 1989 of, *inter alia*, both concealing material facts *and* making false statements. *See* 127 F.3d at 239. In accordance with the law at the time (which was unchanged from 1983, when Mandanici was tried), the trial judge made findings of materiality with respect to the charges of concealing material facts; in contrast, the judge neither made findings nor in-

that he lacked the requisite criminal intent. Once again, Judge Zampano denied the petition and we affirmed by unpublished order. *See United States v. Mandanici*, Crim. No. 82–1103 (D.Conn. Nov. 5, 1990) (endorsement order), *aff'd*, No. 90–1666 (2d Cir. Apr. 24, 1991) (unpublished order). Thus, the present petition constitutes Mandanici's third petition for a writ of error *coram nobis*.

We note that Mandanici filed his present petition before the effective date of the Anti-

terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, § 735, 110 Stat. 1214. Accordingly, we need not—and do not—decide whether AEDPA's provisions apply to *coram nobis* petitions. *Cf. United States v. Perez*, 129 F.3d 255, 260 (2d Cir.1997) (holding that AEDPA's provision requiring a certificate of appealability for an appeal does not apply to § 2255 petitions filed before the statute's effective date).

structed the jury concerning materiality with respect to the charges of making false statements. *See id.*[10]

In view of these facts, we engaged in a bifurcated analysis. First, with respect to Bilzerian's conviction for concealing material facts, we held that *Gaudin* does not apply retroactively on collateral review. Applying the framework announced by the Supreme Court in *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion), we decided as a threshold matter that the rule in *Gaudin* was a "new" rule of constitutional criminal procedure. *See Bilzerian*, 127 F.3d at 240–41. Under *Teague*, new rules of constitutional criminal procedure do not apply retroactively on collateral review unless they fall into either of two categories: (1) new rules that "place an entire category of primary conduct beyond the reach of the criminal law, or new rules that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense"; or (2) "new watershed rules of criminal procedure that are necessary to the fundamental fairness of the criminal proceeding." *Sawyer v. Smith*, 497 U.S. 227, 241–42, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (internal quotation marks and citation omitted). We resolved that the *Gaudin* rule does not fall into either of these categories, and therefore held that it does not apply retroactively on collateral review. *See Bilzerian*, 127 F.3d at 241. The rule in *Gaudin*, we reasoned, "merely shifts the determination of materiality from the judge to the jury ... [and t]here is little reason to believe that juries will have substantially different interpretations of materiality than judges." *Id.*

In contrast, we concluded that the holding of *Ali*, that materiality is an element of the offense of making false state-

ments in violation of § 1001, does apply retroactively. *See Bilzerian*, 127 F.3d at 242. The rule announced in *Ali*, we explained, was substantive, rather than procedural. While a new rule of constitutional criminal procedure generally does not apply retroactively on collateral review, a new rule of substantive criminal law is presumptively retroactive because a defendant may have been "punished for conduct that simply is not illegal." *Id.; see Ingber v. Enzor*, 841 F.2d 450, 453–54 (2d Cir. 1988). We determined that the rule in *Ali* presented such a case; that is, *Ali* redefined § 1001 "to legalize certain conduct previously thought to be criminal." *Bilzerian*, 127 F.3d at 242. Accordingly, we held that the rule of *Ali*—that materiality is an element of the offense of making false statements in violation of § 1001— applies retroactively on collateral review. *See id.*[11]

**B.**

In Mandanici's case, materiality was *not* an element of the false statements offenses with which he was charged, and which survived intact following direct appeal. Thus, at first glance, his case would appear to be an *Ali*-type case. Nevertheless, as Mandanici concedes, Judge Zampano made a finding of materiality as a matter of law. Accordingly, in ruling on the present petition, Judge Thompson treated Mandanici's case as a *Gaudin*-type case and held, following *Bilzerian*, that the new procedural rule does not apply retroactively on collateral review.

On appeal, Mandanici challenges Judge Thompson's conclusion on the ground that Judge Zampano erred not only in failing to submit the question of materiality to the jury, but also in the standard of proof he used to decide the question as a matter of law. Specifically, Mandanici argues that

---

**10.** In *Bilzerian*, we mistakenly attributed subsections to the version of § 1001 that was in effect at the time of Bilzerian's trial. *See* 127 F.3d at 239. Nevertheless, it is apparent from the opinion—and from the post–1996 version of § 1001—that we there referred to the offense of concealing material facts and

the offense of making false statements as § 1001(a)(1) and § 1001(a)(2), respectively.

**11.** Despite this holding, we denied Bilzerian's petition for habeas relief on the ground that the failure to include materiality as an element was harmless. *See* 127 F.3d at 242.

(1) in accordance with Second Circuit law at the time, the issue of materiality was decided at his trial under a preponderance-of-the-evidence standard; (2) after *Gaudin* and *Ali,* materiality must be proved beyond a reasonable doubt; and (3) notwithstanding *Bilzerian,* this change in the law should be applied retroactively under *Teague.* We agree with the first two steps of this argument, but disagree with the third.

### 1.

First, we are persuaded that Judge Zampano decided the issue of materiality at Mandanici's trial under the preponderance standard. The trial transcript itself does not make clear what standard Judge Zampano used.[12] However, to the extent that materiality was treated as an element of an offense when Mandanici was tried, the law within this Circuit was that the judge decided the question as a matter of law under the preponderance standard. *See, e.g., Gribben,* 984 F.2d at 50–51 (stating that "[t]he government bears ... the burden of proving materiality [under both 18 U.S.C. § 1623(a) and the first clause of § 1001], but *its burden need not be 'beyond a reasonable doubt'; the burden is satisfied by a preponderance of the evidence*" (emphasis added)); *United States v. Cunningham,* 723 F.2d 217, 226 (2d Cir.1983) ("Materiality [under § 1623] is ordinarily to be determined by the court by a preponderance of the evidence.").[13]

12. During the charging conference, Mandanici's trial counsel analogized Judge Zampano's finding of materiality to the finding of conspiracy by a preponderance of the evidence that a judge must make before admitting statements by a co-conspirator. *See United States v. Cicale,* 691 F.2d 95, 103 (2d Cir. 1982) (stating that proof of a conspiracy for purposes of admitting co-conspirator statements need only be by a preponderance of the evidence); *see also Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). The record is otherwise silent with respect to the standard of proof Judge Zampano used.

Nevertheless, the Government would have us infer from Judge Zampano's jury instructions that he and/or the jury decided the issue of materiality using the reasonable doubt standard. With respect to each of the three counts charging violations of § 1001, Judge Zampano charged the jury in relevant part:

[T]here are three essential elements which the government must prove beyond a reasonable doubt.... The three essential elements are, first, that on the date in question and with respect to the document in question, the Defendant made or caused to be made a false, fictitious and fraudulent statement or representation.... Second, that he did such act or acts with knowledge that the writing or documents were false, fictitious and fraudulent *in some material part.* Third, that he did such act knowingly and willfully and with an intent to deceive.

We are unwilling to make the inference urged by the Government, however, for two reasons. First, Judge Zampano made only brief reference to materiality—in the context of describing the element requiring proof of knowl-

edge—and, unlike the other components of each element, he did not thereafter define the term. (In contrast, Judge Zampano explicitly defined the term "material" with respect to count four—which charged bank fraud in violation of § 1014—apparently believing, albeit mistakenly, *see supra* note 6, that materiality was an element of that offense to be decided by the jury.) Second, at the time of Mandanici's trial, pattern jury instructions with respect to § 1001 and like provisions often included references to materiality, even when the issue was one for the court rather than the jury. *See, e.g., Waldemer v. United States,* 106 F.3d 729, 734 (7th Cir.1997) (per curiam) (quoting the jury instructions with respect to the offense of making false statements before a grand jury, in violation of 18 U.S.C. § 1623(a), from 2 SEVENTH CIRCUIT, FEDERAL CRIMINAL JURY INSTRUCTIONS 106–07 (West 1984)); *Wickersham v. United States,* 976 F.Supp. 551, 553 & n. 2 (E.D.Tex.1996) (quoting a jury instruction with respect to the offense of making false statements on an income tax return, in violation of 26 U.S.C. § 7206(1)).

13. The Government contends that our statement in *Gribben* applied only to charges of perjury under § 1623(a), and not to charges under § 1001, but we disagree. In dismissing the charges against Gribben and his codefendant in the first instance, the District Court had stated that the government bears the burden of proving materiality *both* under the first clause of § 1001 *and* under § 1623(a) by a preponderance of the evidence. *See United States v. Gribben,* 792 F.Supp. 960, 963 (S.D.N.Y.1992), *rev'd,* 984 F.2d 47 (2d Cir. 1993). And, in reversing, we reinstated the

Under these circumstances, we assume that Judge Zampano made his finding of materiality at Mandanici's trial using the preponderance standard. *Cf. Bilzerian,* 127 F.3d at 240 ("A court in the Second Circuit, deciding the issue at the time of Bilzerian's trial, would certainly have felt compelled to follow the existing precedent in its circuit.").

### 2.

■ Because it is plain that, after *Gaudin* and *Ali,* a finding of materiality under § 1001 must be made using the reasonable doubt standard,[14] the next question is whether this change in the law applies retroactively on collateral review.[15] Although we have never actually addressed the question of whether *Teague* applies to petitions for a writ of error *coram nobis,* we have stated that, "[b]ecause of the similarities between coram

nobis proceedings and § 2255 proceedings, the § 2255 procedure often is applied by analogy in coram nobis cases." *Fleming,* 146 F.3d at 90 n. 2 (internal quotation marks omitted). Accordingly, we now hold that *Teague* applies to *coram nobis* petitions. *See United States v. Swindall,* 107 F.3d 831, 833–34 & n. 4 (11th Cir.1997) (applying *Teague* to a *coram nobis* petition); *United States v. Nazon,* 936 F.Supp. 563, 568–69 (N.D.Ind.1996) (same).

■ Under *Teague,* "new rules" of constitutional criminal procedure or novel applications of old rules "are generally not applied retroactively on [collateral] review." *Bilzerian,* 127 F.3d at 240; *see Stringer v. Black,* 503 U.S. 222, 227–29, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) (extending *Teague* to novel applications of old rules). A "new rule" is a rule that "breaks new ground or imposes a new obligation on the States or the Federal

---

charges against Gribben *both* under § 1623 and under § 1001. *See Gribben,* 984 F.2d at 52.

Moreover, this conclusion accords with the Supreme Court's understanding of our precedent. In *Gaudin,* the Supreme Court cited our decision in *Gribben* for the proposition that some courts permit materiality under § 1001 to be found by a mere preponderance of the evidence. *See* 515 U.S. at 510 n. 1, 115 S.Ct. 2310.

**14.** Strictly speaking, *Gaudin* itself did not change the rule regarding the standard of proof on materiality. *See Gaudin,* 515 U.S. at 510 n. 1, 115 S.Ct. 2310 ("The 'beyond a reasonable doubt' point is not directly at issue in the present case, since it is unclear what standard of proof the District Court applied in making its determination of materiality...."). Instead, the change was a logical consequence of our subsequent holding in *Ali* that materiality is an element of any and all charges under § 1001. *See* 68 F.3d at 1474–75.

**15.** Several courts have held, as we did in *Bilzerian,* that *Gaudin* does not apply retroactively with respect to the issue of whether the judge or jury determines materiality. *See United States v. Shunk,* 113 F.3d 31 (5th Cir. 1997); *United States v. Swindall,* 107 F.3d 831 (11th Cir.1997); *Wickersham v. United States,* 976 F.Supp. 551 (E.D.Tex.1996); *United States v. Nazon,* 936 F.Supp. 563 (N.D.Ind.

1996); *United States v. Holland,* 919 F.Supp. 431 (N.D.Ga.1996); *see also United States v. Dale,* 140 F.3d 1054, 1057–60 (D.C.Cir.1998) (Henderson, J., concurring). *But cf. Waldemer v. United States,* 106 F.3d 729 (7th Cir.1997) (per curiam) (applying *Gaudin* retroactively in a § 2255 proceeding without discussing *Teague* ). In contrast, whether *Gaudin* applies retroactively with respect to the standard of proof appears to be a question of first impression. *But cf. Swindall,* 107 F.3d at 836 (stating that if the appellant had "assert[ed] that the judge used a less exacting standard than 'beyond a reasonable doubt' in its determination that the false statements were material," his argument "would [have] implicate[d] the accuracy of the materiality finding," thereby perhaps triggering the second exception to the *Teague* rule); *Nazon,* 936 F.Supp. at 570 & n. 2 (similar).

Although we did not explicitly address this issue in *Bilzerian,* it is arguable that we did so implicitly. That is, because Bilzerian's trial judge presumably made his finding of materiality under the first clause of § 1001 by a preponderance of the evidence, our holding that *Gaudin* does not apply retroactively with respect to that offense could be read as an implicit rejection of Mandanici's argument. Nevertheless, we decline to read into our *Bilzerian* opinion something that simply is not in it, particularly when doing so would entail resolution of complex constitutional questions.

Government." *Teague*, 489 U.S. at 301, 109 S.Ct. 1060 (plurality opinion). Put differently, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* Under these standards, the requirement that materiality under § 1001 be proved beyond a reasonable doubt is a new rule—or at least a novel application of an old rule. As we discussed above, prior to *Gaudin* and *Ali*, the law of this Circuit was that to the extent materiality was an element under § 1001, it posed a question of law for the trial judge to decide under a preponderance-of-the-evidence standard. *See Gribben*, 984 F.2d at 50–51; *see also Gaudin*, 515 U.S. at 510 n. 1, 115 S.Ct. 2310 (noting that "some courts," including this Court and the Sixth Circuit, "do not require the higher burden of proof"). Thus, it cannot be said that a court considering Mandanici's claim at the time his conviction became final "would have felt compelled by existing precedent to conclude" that the Constitution required proof of materiality beyond a reasonable doubt. *Gray v. Netherland*, 518 U.S. 152, 166, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (internal quotation marks omitted); *see also Butler v. McKellar*, 494 U.S. 407, 412, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990) ("A new decision that explicitly overrules an earlier holding obviously 'breaks new ground' or 'imposes a new obligation.' ").

**3.**

Because the requirement that materiality be proved beyond a reasonable doubt for conviction under § 1001 is a new rule, it does not apply retroactively on collateral review unless it fits within one of the two *Teague* exceptions. Mandanici wisely concedes the inapplicability of the first *Teague* exception—for new rules that "place an entire category of primary conduct beyond the reach of the criminal law" or that "prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense." *Sawyer*, 497 U.S. at 241, 110 S.Ct. 2822. Instead, he argues that the change in the law to require proof of materiality beyond a reasonable doubt fits within the second *Teague* exception. Although this question is a close one, we hold that the second *Teague* exception is also inapplicable.

■ The second *Teague* exception extends to new "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *O'Dell v. Netherland*, 521 U.S. 151, 167, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (internal quotation marks omitted). Although the Supreme Court has acknowledged that "the precise contours of this exception may be difficult to discern," *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), it has emphasized, through words and example, that the exception is exceedingly narrow, applying "only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty," *Graham v. Collins*, 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (internal quotation marks omitted) (ellipsis in original). To fit within the second exception, it is not enough that a new rule "is aimed at improving the accuracy of trial," *Sawyer*, 497 U.S. at 242, 110 S.Ct. 2822, or even that it promotes "[t]he objectives of fairness and accuracy," *Saffle*, 494 U.S. at 495, 110 S.Ct. 1257. The new rule must also be a "watershed rule[ ]" that "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Sawyer*, 497 U.S. at 241–42, 110 S.Ct. 2822 (internal quotation marks and emphasis omitted). In short, it must be a "groundbreaking occurrence," *Caspari v. Bohlen*, 510 U.S. 383, 396, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994), a "sweeping" change that applies to a large swathe of cases rather than a "narrow right" that applies only to a "limited class" of cases, *O'Dell*, 521 U.S. at 167, 117 S.Ct. 1969.

The Supreme Court has underscored the narrowness of the second *Teague* exception by invoking the "sweeping rule" of *Gideon v. Wainwright*, 372 U.S. 335, 83

S.Ct. 792, 9 L.Ed.2d 799 (1963), as an example of the type of rule that fits within the exception, *O'Dell*, 521 U.S. at 167, 117 S.Ct. 1969; *see Saffle*, 494 U.S. at 495, 110 S.Ct. 1257 (stating that a rule must have "the primacy and centrality of the rule adopted in *Gideon* or other rules which may be thought to be within the exception" to qualify under the second *Teague* exception); *see also Gray*, 518 U.S. at 170, 116 S.Ct. 2074, and by repeatedly noting that "we believe it unlikely that many such components of basic due process have yet to emerge." *Teague*, 489 U.S. at 313, 109 S.Ct. 1060 (plurality opinion); *accord Graham*, 506 U.S. at 478, 113 S.Ct. 892; *Sawyer*, 497 U.S. at 243, 110 S.Ct. 2822; *Butler*, 494 U.S. at 416, 110 S.Ct. 1212. The Supreme Court has further underscored the narrowness of the second *Teague* exception by its example. Beginning with the rule at issue in *Teague*, the Court has measured at least eleven new rules, or proposed new rules, of criminal procedure against the criteria for the second exception and, in every case, has refused to apply the rule at issue retroactively. *See O'Dell*, 521 U.S. at 167, 117 S.Ct. 1969 (rule announced in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), that a capital defendant must be permitted to inform his sentencing jury that he is parole-ineligible if the prosecution argues that he is a future danger); *Lambrix v. Singletary*, 520 U.S. 518, 539–40, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (rule announced in *Espinosa v. Florida*, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), that in certain states where a sentencing judge is required to give deference to a jury's advisory sentencing recommendation with respect to the death penalty, neither the jury nor the judge is permitted to consider invalid aggravating circumstances); *Gray*, 518 U.S. at 170, 116 S.Ct. 2074 (rule that the state's failure to give adequate notice of some of the evidence it intended to use in the petitioner's capital sentence proceeding violates due process); *Goeke v. Branch*, 514 U.S. 115, 120–21, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995) (per curiam) (rule that

due process generally prohibits a state appellate court from dismissing the appeal of a recaptured fugitive); *Caspari*, 510 U.S. at 396, 114 S.Ct. 948 (rule that twice subjecting a defendant to a noncapital sentence enhancement proceeding violates the Double Jeopardy Clause); *Gilmore v. Taylor*, 508 U.S. 333, 345–46, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) (rule announced in *Falconer v. Lane*, 905 F.2d 1129 (7th Cir. 1990), that the failure to instruct a jury that it could not return a murder conviction if it found that the defendant possessed a mitigating mental state violates due process); *Graham*, 506 U.S. at 478, 113 S.Ct. 892 (proposed rule that jury instructions preventing a petitioner's sentencing jury from considering mitigating evidence in a capital sentencing proceeding violate the petitioner's Eighth and Fourteenth Amendment rights); *Sawyer*, 497 U.S. at 241–45, 110 S.Ct. 2822 (rule announced in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), that the Eighth Amendment prohibits the imposition of a death sentence by a jury that has been led to the false belief that responsibility for determining the appropriateness of the capital sentence lies elsewhere); *Saffle*, 494 U.S. at 495, 110 S.Ct. 1257 (proposed rule that the trial court's instruction in the petitioner's capital sentence proceeding, telling the jury to "avoid any influence of sympathy," violates the Eighth Amendment); *Butler*, 494 U.S. at 416, 110 S.Ct. 1212 (rule announced in *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), that the Fifth Amendment bars police-initiated interrogation following a suspect's request for counsel in the context of a separate investigation); *Teague*, 489 U.S. at 314–15, 109 S.Ct. 1060 (plurality opinion) (rule announced in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), that the Sixth Amendment's fair cross-section requirement applies to a petit jury).

With these principles and examples in mind, we conclude that the rule requiring proof of materiality beyond a reasonable

doubt for conviction under § 1001 does not fit within the second *Teague* exception. To be sure, we agree with Mandanici that such a rule promotes both accuracy and fairness. *See, e.g., In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding that the reasonable doubt standard is "a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." (internal quotation marks omitted)); *see also Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (referring to the reasonable doubt requirement as "a 'basic protectio[n]' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function" (alteration in original)); *cf. Nutter v. White*, 39 F.3d 1154, 1157–58 (11th Cir.1994) (holding that the rule announced in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), that certain jury instructions on the beyond-a-reasonable-doubt standard violate due process, fits within the second *Teague* exception because "[t]he reasonable doubt standard guards against conviction of the innocent by ensuring the *systematic* accuracy of the criminal system" and an *improper* reasonable doubt charge "undermines the fundamental fairness of *every* trial in which it is used"). Moreover, we acknowledge that some cases, including at least one in this Circuit, can be read to hold that promoting fairness and accuracy is, by itself, sufficient to qualify for the second *Teague* exception. *See Sanders v. Sullivan*, 900 F.2d 601, 606–07 (2d Cir.1990) (holding that a rule prohibiting conviction based on the use of perjured testimony at trial even though the prosecution has no knowledge of its falsity qualifies for the second *Teague* exception); *see also Ostrosky v. Alaska*, 913 F.2d 590, 594–95 (9th Cir.1990) (holding that a rule that a defendant has a due process right "to rely as a matter of law on a lower court decision in his own case that a statute is unconstitutional even though the case is on appeal to a higher court" fits within the second *Teague* exception). However, the Supreme Court has emphasized, most recently in *O'Dell,* that to qualify for the second *Teague* exception, a rule must also be a "watershed" rule. *See O'Dell,* 521 U.S. at 167, 117 S.Ct. 1969; *see also Lyons v. Stovall,* 188 F.3d 327, 341–42 (6th Cir.1999); *Spaziano v. Singletary,* 36 F.3d 1028, 1042–43 (11th Cir.1994); *Cain v. Redman,* 947 F.2d 817, 822 (6th Cir.1991). Indeed, in 1990, in *Sawyer v. Smith,* the Supreme Court explicitly rejected an argument made by the petitioner that "the second *Teague* exception should be read to include new rules ... that preserve ... accuracy and fairness," 497 U.S. at 242, 110 S.Ct. 2822 (internal quotation marks omitted), admonishing that such a test

> looks only to half of our definition of the second exception. Acceptance of petitioner's argument would return the second exception to the broad definition that Justice Harlan first proposed in *Desist,* but later abandoned in *Mackey* [*v. United States,* 401 U.S. 667, 91 S.Ct. 1171, 28 L.Ed.2d 388 (1971)], under which new rules that "significantly improve the pre-existing fact-finding procedures are to be retroactively applied on habeas." *Desist v. United States,* 394 U.S. 244, 262, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). In *Teague,* we modified Justice Harlan's test to combine the accuracy element of the *Desist* test with the *Mackey* limitation of the exception to watershed rules of fundamental fairness. It is thus not enough under *Teague* to say that a new rule is aimed at improving the accuracy of trial. More is required. A rule that qualifies under this exception must not only improve accuracy, but also "'alter our understanding of the *bedrock procedural elements*'" essential to the fairness of a proceeding. *Teague,* 489 U.S. at 311,

109 S.Ct. 1060 (quoting *Mackey*, 401 U.S. at 693, 91 S.Ct. 1171).

497 U.S. at 242, 110 S.Ct. 2822.

In short, unlike the "sweeping rule of *Gideon*, which established an affirmative right to counsel in all felony cases," *O'Dell*, 521 U.S. at 167, 117 S.Ct. 1969, the requirement that materiality be proved beyond a reasonable doubt for conviction under § 1001 is a "narrow right" that affects only "a limited class" of cases, *id.*—indeed, as we discussed above, it affects only a subset of § 1001 cases, in the subset of circuits, like ours, that prior to *Gaudin* had allowed proof of materiality by a mere preponderance of the evidence. Thus, "[w]hatever one may think of the importance of [this] rule"—and we think it is of great importance—"it has none of the primacy and centrality of the rule adopted in *Gideon* or other rules which may be thought to be within the exception." *Saffle*, 494 U.S. at 495, 110 S.Ct. 1257. Accordingly, the rule that materiality must be proved beyond a reasonable doubt for conviction under § 1001 does not apply retroactively on collateral review, and Mandanici cannot challenge his 1983 conviction on the basis of any such error.

### III.

To summarize, we hold as follows:

(1) With respect to the offenses of making false statements in violation of 18 U.S.C. § 1001 of which Mandanici was convicted in 1983, and which survived intact following direct appeal, the *trial judge* made a finding of materiality using the preponderance-of-the-evidence standard, consistent (to the extent relevant here) with the law of this Circuit at the time of the trial.

(2) Following *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), and *United States v. Ali*, 68 F.3d 1468 (2d Cir.1995), the law in this Circuit requires that for a conviction under § 1001 to be sustained, the *jury* must have made a finding of materiality beyond a reasonable doubt.

(3) The framework established by the Supreme Court in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), applies to petitions for a writ of error *coram nobis*.

(4) Under *Teague*, the change in the law of this Circuit to require a finding of materiality beyond a reasonable doubt in any and all prosecutions under § 1001 is a new rule of constitutional criminal procedure or a novel application of an old rule—and therefore does not apply retroactively unless it falls within one of the two exceptions fashioned by the Supreme Court.

(5) This change concededly does not fit within the first *Teague* exception, for new rules that "place an entire category of primary conduct beyond the reach of the criminal law, or new rules that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense." *Sawyer v. Smith*, 497 U.S. 227, 241, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (citation omitted).

(6) Nor does this change fit within the second *Teague* exception, for "new 'watershed rules of criminal procedure' that are necessary to the fundamental fairness of the criminal proceeding." *Sawyer*, 497 U.S. at 241–42, 110 S.Ct. 2822.

(7) Thus, the rule that materiality must be proved beyond a reasonable doubt for conviction under § 1001 does not apply retroactively on collateral review, and Mandanici cannot challenge his 1983 conviction on the ground of any such error.

Accordingly, the judgment of the District Court is affirmed.

KEARSE, Circuit Judge, concurring:

I concur in the majority opinion and the judgment. I write separately to state my view that even absent *Teague* considerations, *coram nobis* relief would be inappropriate in this case.

An important difference between habeas relief and *coram nobis* lies in the fact that, because the latter comes after the petitioner has completed his sentence, the petitioner will not be retried; thus, the granting of *coram nobis* normally results in the expungement of the conviction, with no possibility of further proceedings to determine whether the petitioner was guilty of the offense charged. Accordingly, it has long been held that in order to obtain *coram nobis* relief a petitioner must show an error that "compel[s] . . . action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954); see, e.g., *Fleming v. United States*, 146 F.3d 88, 90 (2nd Cir. 1998); *Foont v. United States*, 93 F.3d 76, 79 (2nd Cir.1996); *Nicks v. United States*, 955 F.2d 161, 167 (2nd Cir.1992).

In the present case, the error is that an element of the offense was found established by a preponderance of the evidence, rather than beyond a reasonable doubt. A preponderance means more likely than not. The element was the materiality of false statements made by petitioner Mandanici in connection with obtaining payment for services on a federally funded construction contract. There is not contention in this petition that the evidence was not sufficient to establish materiality by a preponderance. (And the reason may be found in our opinion affirming on the two counts of conviction at issue here. *See United States v. Mandanici*, 729 F.2d 914, 920 (2nd Cir.1984)(noting that the record showed not only that Mandanici has represented that the construction project was completed though it was not, but also that he had "submitted false documentation of his purported expenditures with respect to nearly every task detailed in" the contract's work specification); *id.* at 921 (noting that there was "ample proof" to permit a jury to find "that Mandanici had no intention of ever completing the agreed-upon work").)

Nor is there any suggestion here that a standard below that of preponderance was used. Thus, the consequences of granting a writ of *coram nobis* in this case would be to expunge, without possibility of reinstatement, the conviction of a person who more likely than not committed the offenses of which he stands convicted. In my view, the granting of *coram nobis* in such a circumstance would not properly be characterized as necessary to "achieve justice."