UNITED STATES of America,
Appellee,

v.

Mohammed A. SALAMEH, Nidal Ayyad, Ahmad Mohammed Ajaj, also known as Khurram Khan, Mahmud Abouhalima, also known as Mahmoud Abu Halima, Defendants–Appellants,

Ramzi Ahmed Yousef, Bilal Alkaisi, also known as Bilal Elqisi, Abdul Rahman Yasin, also known as Aboud, Abdul Hakim Murad, also known as Saeed Ahmed, Eyad Ismoil, also known as Eyad Ismail, Wali Khan Amin Shah, also known as Grabi Ibrahim Hahsen, Defendants.

Nos. 99–1619(L), 99–1620(CON), 99–1621(CON) and 99–1623(CON).

United States Court of Appeals,
Second Circuit.

Aug. 6, 2001.

Frank Handelman, New York, NY, for appellant Mohammad A. Salameh.

Francisco Celledonio, New York, NY, for appellant Nidal Ayyad.

Miranda Fritz, New York, NY, for appellant Ahmad Mohammad Ajaj.

Lawrence Mark Stern, New York, NY, for appellant Mahmud Abouhalima.

Karl Metzner, Assistant United States Attorney, for Mary Jo White, United States Attorney for the Southern District of New York; David Berardinelli and Baruch Weiss, Assistant United States Attorneys, on the brief, for appellee.

Present McLAUGHLIN, CALABRESI and POOLER, Circuit Judges.

## SUMMARY ORDER

This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued.

ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the decision of the district court be and it hereby is AFFIRMED.

In 1994, after a lengthy jury trial in the United States District Court for the Southern District of New York (Duffy, *J.*), defendants-appellants Mohammed Salameh, Nidal Ayyad, Mahmoud Abouhalima and Ahmad Ajaj were convicted on all counts of a criminal indictment arising out of their participation in the plot to bomb the World Trade Center. Each was sentenced principally to 240 years' imprisonment. In August 1998, this Court affirmed the district court's judgment of conviction, but vacated defendants' sentences and remanded the case for resentencing. *United States v. Salameh,* 152 F.3d 88, 161 (2d Cir.1998) (*per curiam*), *cert. denied,* 525 U.S. 1112, 119 S.Ct. 885, 142 L.Ed.2d 785 (1999) ("*Salameh I*"). Additionally, this Court declined to exercise appellate jurisdiction over defendants' claims of ineffective assistance of counsel and remanded those claims, along with defendants' post-trial motions for a new trial pursuant to Federal Rule of Criminal Procedure 33, to the district court for its consideration. *Id.* at 160–61.

Thereafter, and subsequent to hearings on defendants' post-trial motions, the district court denied defendants' post-trial motions for a new trial in their entirety, resentenced each defendant to a lengthy prison term and imposed on each defendant a fine and restitution. In a separate *per curiam* opinion filed today, we affirm the sentence imposed by the district court, as modified therein. For the reasons stated below, we affirm the district court's denial of defendants' post-trial motions.

We review a district court's denial of a motion for a new trial for abuse of discretion. *United States v. Torres,* 128 F.3d 38, 48 (2d Cir.1997). Any findings of fact made by the district court in resolving the motions are to be accepted unless shown to be clearly erroneous. *United States v. Gallego,* 191 F.3d 156, 161 (2d Cir.1999), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000).

1. Defendants assert that they are entitled to a new trial based on, *inter alia,* supposed newly discovered evidence that Federal Bureau of Investigations ("FBI") Supervisory Special Agent David Williams gave perjured testimony at their trial. We disagree.

■ Defendants' allegations of perjury by Agent Williams rest foursquare on a report issued after defendants' trial by the Office of the Inspector General for the Department of Justice (the "Inspector General's Office"). *See* Michael R. Bromwich, Inspector General, *The FBI Laboratory: An Investigation into Laboratory Practices and Alleged Misconduct in Explosives Related and Other Cases* (April 1997) (the "Inspector General's Report" or the "Report"). The Inspector General's Report, *inter alia,* criticized several aspects of Agent Williams's trial testimony, all of which supported the government's theory that urea nitrate was the main charge used in the bomb that exploded under the World Trade Center. This in-

cluded his testimony about: (1) the defendants' capacity to manufacture a bomb composed of urea nitrate; (2) the size and composition of the bomb that exploded under the World Trade Center; (3) disputes he had with FBI Special Supervisory Agent Dr. Frederic Whitehurst concerning the substance of the FBI's reports detailing the findings of its investigation; and (4) the FBI's attempts to manufacture a bomb composed primarily of urea nitrate and his role in such attempts. Although we accept the Inspector General's Report that Agent Williams, at times, offered "inaccurate and incomplete testimony," *Inspector General's Report* at 83, we conclude that a new trial is not warranted.

■ "[R]elief is justified under Rule 33 only if the newly-discovered evidence": (1) "could not have been discovered, exercising due diligence, before or during trial"; (2) is "material"; (3) is "non-cumulative"; and (4) if admitted at trial, would probably have led to an acquittal. *Gallego,* 191 F.3d at 161 (internal quotation marks omitted). In addition to these four requirements, when perjury is alleged as the newly discovered evidence, a defendant must prove that the witness, in fact, offered perjured testimony. *United States v. Diaz,* 176 F.3d 52, 106 (2d Cir.) (citations omitted), *cert. denied,* 528 U.S. 957, 120 S.Ct. 386, 145 L.Ed.2d 301 (1999). Perjury requires more than just showing a witness's testimony was false—it must have been *intentionally* false as to a *material* matter. 18 U.S.C. §§ 1621, 1623; *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993).

■ If the witness perjured himself, but the government was unaware of the perjury during trial, "a new trial is warranted only if the testimony was material and the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convict-

ed." *United States v. Moreno*, 181 F.3d 206, 213 (2d Cir.) (citations omitted), *cert. denied*, 528 U.S. 977, 120 S.Ct. 427, 145 L.Ed.2d 334 (1999). If, on the other hand, "the prosecution knew or should have known of the perjury, a new trial is warranted if 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Wong*, 78 F.3d 73, 81 (2d Cir.1996) (quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

Even if we agreed that Agent Williams's inaccurate testimony amounted to perjury, the defendants have failed to produce any evidence that the United States Attorney's Office was aware of this perjury. Moreover, we are not left "with a firm belief that but for the perjured testimony, the defendants would most likely not have been convicted." *Moreno*, 181 F.3d at 213 (citation omitted). To the contrary, independent of Williams's testimony, there is a surfeit of evidence of defendants' guilt and, specifically, of their manufacture of a bomb, the main charge of which was composed of urea nitrate, and detonation thereof under the World Trade Center. *See Salameh I*, 152 F.3d at 107–09, 151–57.

In sum, we hold that the district court did not abuse its discretion in denying defendants' motions for a new trial on grounds that Agent Williams gave perjured testimony at their trial.

■ 2. Ajaj argues that he is also entitled to a new trial because, *inter alia*, his trial counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to request an instruction to the jury that, if it found that Ajaj had been part of the conspiracy prior to his incarceration, it could find that, after his incarceration, he withdrew from the conspiracy. We disagree.

Ajaj asserts that counsel's failure to request such an instruction was extremely prejudicial in light of the jury's determination of his guilt under a *Pinkerton* theory of liability, which "permits criminal liability of a conspirator for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *United States v. Bala*, 236 F.3d 87, 95 (2d Cir.2000) (citation omitted); *see also Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). At the district court's post-trial hearing on defendants' post-trial motions, Ajaj's trial counsel testified that he did not seek a withdrawal from the conspiracy instruction because it was patently inconsistent with Ajaj's theory of the case, namely that Ajaj was never part of the conspiracy. Ajaj counters that his trial counsel should have argued in the alternative—by asking the jury to find either that: (1) Ajaj was never part of the conspiracy; or (2) even if, at one time, he was a part of the conspiracy, he withdrew therefrom upon his incarceration.

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that: (1) counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms," and (2) the alleged insufficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ At the outset, we note that on his prior appeal to this Court we agreed that Ajaj would have been entitled to a withdrawal from the conspiracy instruction had his trial counsel chosen to ask for one. *Salameh I*, 152 F.3d at 150. Nevertheless, a defendant cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate. *United States v. Sanchez*, 790

F.2d 245, 253 (2d Cir.1986). Similarly, lack of success of a chosen strategy does not warrant judicial second-guessing. *United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir.1987).

Moreover, we find that Ajaj's trial counsel's decision not to request a withdrawal from the conspiracy instruction was quite reasonable in light of the overwhelming evidence presented by the government that even while in the jailhouse Ajaj had, in fact, continued to communicate with his co-conspirators, in particular Ramzi Yousef, the mastermind of the plot. In light of such evidence, Ajaj also cannot prove that the failure to request such a charge resulted in prejudice under *Strickland*, because it is highly improbable that if the jury found (as its verdict suggests it did) that Ajaj was part of the conspiracy at the time of his unlawful entry into the United States, it would have believed that he withdrew from the conspiracy upon his incarceration. Accordingly, the district court did not abuse its discretion in denying Ajaj's motion for a new trial on grounds that his trial counsel rendered ineffective assistance by failing to request a withdrawal from the conspiracy instruction.

We have considered the remainder of defendants' arguments and find them to be without merit.

Accordingly, the district court's denial of defendants' post-trial motions for a new trial is AFFIRMED.