Jose **HERNANDEZ**, Petitioner

v.

**UNITED STATES of America,**
**Respondent.**

No. 98 CR. 318(JGK).
No. 01 CIV. 3437(JGK).

United States District Court,
S.D. New York.

Sept. 3, 2003.

Marc L. Greenwald, Assist. U.S. Atty., Mary Jo White, U.S. Atty., Crim. Div., Lisa Korologos, U.S. Attorney's Office, New York City, for U.S.

Jose Hernandez, Fairton, NJ, pro se.

### OPINION AND ORDER

KOELTL, District Judge.

The petitioner, Jose Hernandez, moves pursuant to 28 U.S.C. § 2255 to vacate or set aside his conviction and sentence. The petitioner raises a series of contentions, none of which has merit. For the reasons set forth below, the petitioner's motion is denied.

### I.

On April 8, 1998, Jose Hernandez was charged in three counts by an indictment filed under seal. At the time he was indicted, Hernandez was serving an unrelated state sentence and was subsequently writted into federal custody.

On December 11, 1998, Hernandez entered into a cooperation agreement with the Government and pleaded guilty to three counts of a superseding information. Count One of the superseding information charged the petitioner with conspiracy to commit robbery in violation of 18 U.S.C. § 1951(a); Count Two charged him with possession of a firearm in violation of 18 U.S.C. §§ 924(c) and 2; and Count Three charged him with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846.

Pursuant to the Government's motion, and pursuant to § 5K1.1 of the Sentencing Guidelines and 18 U.S.C. 3553(e), this Court downwardly departed from the applicable Guideline Sentencing Range of 135 to 168 months to be followed by a term of 60 months imprisonment, based on the petitioner's substantial cooperation in the investigation and prosecution of others. On August 17, 2000, the petitioner was sentenced principally to a term of 38 months concurrently on Counts One and Three, to be followed by a term of 10 months on Count Two, all to run concurrently with the undischarged term of his state court conviction, to be followed by a five-year term of supervised release.

Hernandez filed a notice of appeal. Appellate counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), advising the Court of Appeals that there were no non-frivolous grounds for appeal. On February 9, 2001, the Court of Appeals for the Second Circuit summarily affirmed the petitioner's conviction and sentence. The petitioner subsequently filed this § 2255 motion, raising a series of claims. This Court appointed counsel to represent the peti-

tioner. None of the petitioner's claims have merit.

## II.

The petitioner seeks to disqualify this Court pursuant to 28 U.S.C. §§ 144, 455(a) and (b)(1), on the grounds that the Court is unfair and biased against him. The Government argues that the motion for recusal is untimely. However, even if the motion is deemed timely, it must be denied because it is completely without merit.

Section 144 of Title 28 requires recusal "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party...." Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In addition, § 455(b)(1) requires a judge to disqualify himself in the specific circumstances "[w]here he has a personal bias or prejudice concerning a party...."

Section 455(a) provides broader grounds for disqualification than either § 144 or § 455(b)(1), but when, as here, a party has not alleged any grounds for recusal other than those relating to the district court's alleged bias or prejudice, those broader grounds are not implicated. *See Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir.1987). Because the petitioner claims only alleged bias and prejudice by the Court, his motion can be treated as being made under § 144 and § 455(b)(1). *Id.*

The analysis and the standards applied to § 144 and § 455(b)(1) are the same. *Id.* Both sections normally require that the disqualifying bias or prejudice "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *see also Apple* 829 F.2d at 333. The standard for recusal under both § 144 and § 455 is whether "an objective disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir.1992) (citing *DeLuca v. Long Island Lighting Co., Inc.*, 862 F.2d 427, 428–29 (2d Cir.1988)).

■ In this case, the petitioner has made no showing to support his allegations that the Court is biased or prejudiced. The petitioner points to no statements by the Court that support his contention. Nor does the conduct of the proceedings reflect any bias or prejudice. The petitioner argues that the length of his sentence is evidence of the Court's prejudice against him. Sections 144 and 455 ordinarily require that the alleged bias and prejudice stem from an extrajudicial source, and what the judge has learned or done in the proceeding, including the length of the sentence imposed, are insufficient grounds for disqualification. *See King v. United States*, 576 F.2d 432, 437 (2d Cir.1978). Moreover, the petitioner pleaded guilty to charges where the Guideline sentence was 195 to 228 months. The Court departed downward to a sentence of 48 months, with the sentence to run concurrently with the undischarged term of the petitioner's state court conviction. The sentence and the transcript reflect no bias or prejudice, and the petitioner has proffered no support for his motion for recusal under § 144 or § 455(b)(1). The petitioner's motion for disqualification is denied.

### III.

The petitioner claims that his attorney was constitutionally ineffective. He claims that counsel failed to explain fully the consequences of pleading guilty, coerced him into entering into the plea agreement, and neglected to provide him with an opportunity to obtain a more favorable plea agreement.

■ A claim that a guilty plea was involuntary due to ineffective assistance of counsel must be evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (*Strickland* analysis applies in the context of guilty pleas); *Chang v. United States*, 250 F.3d 79, 84 (2d Cir.2001). To prevail on a claim of ineffective assistance of counsel, the petitioner must show both (1) that his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) that counsel's deficient performance was prejudicial to the petitioner's case. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Bunkley v. Meachum*, 68 F.3d 1518, 1521 (2d Cir.1995). Self-serving conclusory allegations to this effect are insufficient to establish ineffective assistance of counsel. *United States v. Torres*, 129 F.3d 710, 715–717 (2d Cir.1997); *United States v. Gonzalez*, 970 F.2d 1095, 1099–1101 (2d Cir.1992).

■ The petitioner cannot meet the first prong of the *Strickland* test merely by showing that his counsel employed poor strategy or made a wrong decision. Instead, the petitioner must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Indeed, there is a "strong presump-tion" that defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a defendant bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (citing *Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052).

To satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *see also Ramos v. United States*, No. 97–CV–2572, 1998 WL 230935, at *3 (S.D.N.Y. May 8, 1998).

■ The petitioner could not satisfy the first prong of the *Strickland* test because his allegations are wholly conclusory and are refuted by his sworn statements at the plea allocution. The petitioner makes vague allegations that he was somehow coerced into pleading, but he makes no specific allegations. Moreover, the allegations are specifically refuted by his sworn statements at the plea allocution that he was satisfied with his counsel and his counsel's representation of him, that he had a full opportunity to discuss with counsel the consequences of pleading guilty, that he understood the contents of the plea agreement, that he had not been coerced into entering into the plea agreement or pleading guilty, and that he was pleading guilty voluntarily and of his own free will. (Transcript of Hearing dated Dec. 11, 1998 ("12/11/98 Tr."), at 8, 24–25, 29.) Similarly, the petitioner's claim that he was misled as to the possible sanctions

he faced is refuted by the fact that the Court explained the penalties on each of the counts and further explained that the terms of imprisonment could be imposed consecutively, and by the fact that the petitioner acknowledged that he understood that he faced a possible sentence of life plus twenty-five years. (*Id.* at 16–22). A district court has the discretion to rely on a defendant's sworn statements in open court because such statements carry a strong presumption of verity which cannot be overcome by conclusory allegations. *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *United States v. Hernandez,* 242 F.3d 110, 112–13 (2d Cir.2001). The petitioner was advised by counsel regarding both the guilty plea and the cooperation agreement, and as a result of both, he received a sentence of 48 months, compared with a potential of 195 to 228 months. The petitioner has failed to show that there was any ineffective assistance of counsel. Indeed, as a result of his counsel's effective representation, the petitioner entered into a plea agreement and received a sentence far below the sentence that otherwise would have been called for by the Guidelines. The petitioner thus received effective assistance of counsel.

Finally, the petitioner could not satisfy the second prong of the *Strickland* inquiry because he does not allege that but for his counsel's alleged errors he would not have pleaded guilty. *See Hill,* 474 U.S. at 59, 106 S.Ct. 366. Indeed, the petitioner contends that he was prejudiced by the fact that he was not given an opportunity to secure a more favorable plea agreement.

Because the petitioner has failed to satisfy either prong of the *Strickland* test, his claim of ineffective assistance of counsel regarding his plea must be denied.

## IV.

■ The petitioner contends that the case should be dismissed because he was arrested more than one month after the five-year statute of limitations period had passed. However, it was the filing of the indictment, and not the petitioner's arrest, that tolled the statute of limitations. *See United States v. Grady,* 544 F.2d 598, 601 (2d Cir.1976). The Government shows that the initial indictment was in fact brought and sealed within the five-year statute of limitations. It alleges events that occurred on April 10, 1993, and it was brought on April 8, 1998. Therefore, the prosecution in this case was not barred by the statute of limitations.

■ In any event, the petitioner subsequently pleaded guilty to a superseding information on December 11, 1998. By pleading guilty, the petitioner unconditionally admitted his guilt and waived his right to appeal all nonjurisdictional contentions. *See, e.g., United States v. Maher,* 108 F.3d 1513, 1528 (2d Cir.1997). The petitioner's claim that the statute of limitations was violated is thus without merit.

## V.

The petitioner contends that he was entitled to have the time he spent in state custody credited toward his federal sentence.

■ The petitioner's claim is factually inaccurate because the Court did give the petitioner credit for time that he had spent in state custody in determining the extent of the substantial downward departure. The Court explicitly indicated that it would take into account the time already spent in state custody when determining the amount of the downward departure and would then make the remaining sentence concurrent with the undischarged term of the petitioner's state court sentence.

(Transcript of Hearing dated Aug. 17, 2000 ("8/17/00 Tr."), at 28–29.) In any event, the extent of the departure is not a basis for relief under § 2255. Absent a complete miscarriage of justice, claims alleging non-constitutional sentencing errors that have not been raised on direct appeal may not be reviewed on a § 2255 motion. *See Graziano v. United States,* 83 F.3d 587, 590 (2d Cir.1996). The petitioner's sentencing claim does not suggest a miscarriage of justice or a constitutional violation and cannot be the basis for relief under § 2255.

## VI.

The petitioner contends that the Government violated the Vienna Convention on Consular Relations (the "Vienna Convention"), Apr. 24, 1963, art. 36, para. 1, 21 U.S.T. 77, 596 U.N.T.S. 261, and 28 C.F.R. § 50.5, by failing to advise him of his rights to notify and communicate with his consulate, specifically the consulate of the Dominican Republic. The Vienna Convention provides, in relevant part:

> With a view to facilitating the exercise of consular functions relating to nationals of sending states:

> . . . . .

> (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph. . . .

21 U.S.T. 77, 596 U.N.T.S. 261, art. 36, para. 1. Moreover, the rights of consular notification and consultation are reinforced by federal regulations designed to implement these treaty obligations. Specifically, Title 28, Code of Federal Regulations, Section 50.5 states:

> In every case in which a foreign national is arrested the arresting officer shall inform the foreign national that his consul will be advised of his arrest unless he does not wish such notification to be given.

28 C.F.R. § 50.5(a)(1). Section 50.5 further requires an arresting agent to "inform the nearest U.S. Attorney of the arrest and of the arrested person's wishes regarding consular notification." *Id.* § 50.5(a)(2). The U.S. Attorney is then required to "notify the appropriate consul except where he is informed that the foreign national does not desire such notification to be made." *Id.* § 50.5(a)(3).

▇ It is undisputed that the petitioner was not informed of his rights under the Vienna Convention and that the Dominican Republic consulate was not notified of his arrest. Therefore, the Government has violated the petitioner's rights under the Vienna Convention. However, a violation of the Vienna Convention does not provide a defendant in a criminal case with the right to any relief unless the defendant can establish prejudice as a result of the violation. *See Bennett v. United States,* No. 99 Civ. 4481, 2000 WL 10213, at \*1–\*2 (S.D.N.Y. Jan.5, 2000); *United States v. Chen,* No. 97 Cr. 763, 1999 WL 194749, at \*3–\*4 (S.D.N.Y. Apr.7, 1999) (citing *Waldron v. Immigration and Naturalization Service,* 17 F.3d 511 (2d Cir.1993)). *See also Breard v. Greene,* 523 U.S. 371, 377, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (per curiam); *United States v. Rodrigues,* 68 F.Supp.2d 178, 183 (E.D.N.Y.1999); *United States v. Salameh,* 54 F.Supp.2d 236,

279–80 (S.D.N.Y.1999), *aff'd,* 16 Fed.Appx. 73 (2d Cir. Aug.6, 2001) (unpublished opinion). In this case, the petitioner points to no prejudice at all as a result of the Government's violation of the Vienna Convention. The petitioner does not explain how consultation with the Dominican Republic consulate would have changed any actions that he took in this case, or altered the outcome of the case in any way. Therefore, because the petitioner has failed to show that he suffered prejudice, he is not entitled to any relief on this basis.

### VII.

The petitioner claims that his status as a deportable alien is likely to increase the severity of his sentence and thus should have been considered as a basis for a downward departure. Specifically, the petitioner contends that he will not be eligible for some preferred conditions of imprisonment, including reassignment to minimum security facilities for the latter part of his sentence.

 Like his argument with respect to credit for time spent in state custody, the issue of any credit to be afforded because of the petitioner's status as a deportable alien is not a basis for relief under § 2255 because it is a sentencing issue that does not rise to a miscarriage of justice or a constitutional violation. *See Graziano,* 83 F.3d at 590.

 In any event, there is no merit to the petitioner's argument. His status as a deportable alien was not a basis for a downward departure in this case. Even if the argument had been made, it would not have affected the petitioner's sentence. The Court of Appeals for the Second Circuit has held that "pertinent collateral consequences of a defendant's alienage" might serve as a valid basis for a downward departure "if those consequences were extraordinary in nature or degree." *United*

*States v. Restrepo,* 999 F.2d 640, 644 (2d Cir.1993). Deportation alone is not an extraordinary consequence that would justify downward departure. *Id.* at 646–47. The only consequence submitted by the petitioner is his likely ineligibility for reassignment to minimum security facilities at the conclusion of his term of imprisonment. However, disapproval of the Bureau of Prisons' policy toward denying reassignment of deportable aliens to minimum-security facilities is "an inappropriate basis for departure." *Id.* at 645–46; *see also United States v. Adubofour,* 999 F.2d 639, 640 (2d Cir.1993) (noting that ineligibility of deportable alien to serve latter part of sentence in halfway house is not sufficient ground for downward departure). The record reveals no extraordinary consequence resulting from the petitioner's status as a deportable alien that could serve as a valid basis for a downward departure.

The petitioner makes the related arguments that his remorse and the Court's "special feel" for his case justify downward departure. The Court departed downward to the sentence that the Court believed was the appropriate sentence taking all factors into account, and the Court had discretion under § 5K1.1 to depart downward to any level. The petitioner is not entitled to any further downward departure.

### VIII.

The petitioner argues that, based on his cooperation agreement with the Government, he is entitled to a special visa allowing him to remain in this country, or, in the alternative, is entitled to a retroactive application of a two-level reduction in the Offense Level for Sentencing Guidelines purposes because he consented to deportation.

The Court must first determine what measures the Government affirmatively

agreed to take on behalf of the petitioner under the cooperation agreement. The agreement provides, in pertinent part, as follows:

It is understood that Jose Hernandez's truthful cooperation with the Office [the United States Attorney's Office for the Southern District of New York] is likely to reveal activities of individuals who might use violence, force, and intimidation against Jose Hernandez, his family, and loved ones. Should Jose Hernandez's cooperation present a significant risk of physical harm, this Office, upon the written request of Jose Hernandez, will take steps that it determines to be reasonable and necessary to attempt to ensure his safety and that of his family and loved ones. These steps may include application to the Witness Security Program of the United States Marshal's Service, whereby Jose Hernandez, his family, and loved ones, if approved, could be relocated under a new identity. It is understood, however, that the Witness Security Program is under the direction and control of the United States Marshal's Service and not of this Office.

The agreement further provides:

It is understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office. This Office will, however, bring the cooperation of Jose Hernandez to the attention of other prosecuting offices, if requested by him. Nor does this Agreement bind the Immigration and Naturalization Service (INS), although this Office will bring the cooperation of Jose Hernandez to the attention of INS, if requested by him.

(Cooperation Agreement dated Dec. 11, 1998, at 3.)

The petitioner argues that the Government has not lived up to its obligations under the cooperation agreement. He contends that because he faces a danger of retaliation in the Dominican Republic as a result of his cooperation with the Government, he is entitled to a special "S" Visa that will permit him to remain in this country. He argues that the Government should be held in breach and ordered to specifically perform the agreement according to its terms.

■ The Government has satisfied its obligations under the cooperation agreement. In response to the request by the petitioner's counsel, the Government forwarded a request to the Federal Bureau of Investigation (FBI) to determine the petitioner's eligibility for the Witness Protection Program or an "S" Visa. (*See* Affirmation of Bret R. Williams dated Jan. 23, 2002, at ¶¶ 4–5.) The FBI ultimately concluded, based on the evidence adduced by the petitioner and on the fact that the petitioner's cooperation had never been made public, that neither the petitioner nor his family faced any danger as a result of his cooperation. The FBI therefore declined to make an application on his behalf for either an "S" Visa or placement in the Witness Protection Program. (*Id.* at ¶ 6.) In January 2002, the new Assistant United States Attorney assigned to this matter confirmed with the FBI that Hernandez's cooperation did not warrant an "S" Visa or placement in the Witness Protection Program. (*Id.* at ¶ 8.) The Government satisfied its obligations under the cooperation agreement when it forwarded to the FBI the petitioner's request for protection.

The Government also fulfilled its obligation to inform the INS of the petitioner's cooperation. In December 2002, the Government represented to the Court that it had forwarded information regarding the petitioner's cooperation to the deportation office at the INS. (Letter of Bret R. Williams dated Dec. 9, 2002.) The petitioner's counsel, who was appointed under

the Criminal Justice Act for the purposes of the habeas petition and who represented the petitioner pro bono at his immigration proceedings, confirmed that the Government, pursuant to the agreement, had informed the immigration authorities of the petitioner's cooperation. (*See* Transcript of Hearing dated July 14, 2003 ("7/14/03 Tr."), at 5.)

The petitioner's claim that he is entitled to an "S" Visa is without merit. The Government did not undertake to obtain an "S" Visa for the defendant. Rather, the Government undertook to bring the defendant's cooperation to the attention of the INS, if requested to do so, and it did that. It is also clear that the cooperation agreement plainly stated it did not bind the INS and that the petitioner acknowledged at his plea allocution that there were no promises made to him other than those contained in the plea agreement. (12/11/98 Tr. at 25.) Indeed, at the petitioner's sentencing on August 17, 2000, his counsel conceded that the "likelihood of Mr. Hernandez obtaining [an 'S' Visa] is not likely." (8/17/00 Tr. at 21.) The petitioner's counsel used the argument of deportation and danger as an argument for a reduced sentence. Plainly, counsel and the petitioner were aware that it was unlikely that the petitioner would obtain an "S" Visa, and all that the Government undertook to do was convey the petitioner's cooperation to the INS, which it did. There is no basis to conclude that the Government failed to abide by the terms of the cooperation agreement.

In the alternative, the petitioner argues that he should receive a downward departure based on his agreement to deportation. Apart from the fact that the petitioner's efforts to secure a special visa permitting him to remain in this country contradict his claim that he consented to deportation, the petitioner would not be entitled to a downward departure on these grounds. The petitioner refers to a policy adopted in 1996 by the United States Attorneys for the Eastern and Southern Districts of New York to support one-step downward departures under § 5K2.0 of the Guidelines for deportable alien defendants who pleaded guilty and consented to deportation as part of their plea agreements. However, in July 1998, five months before the petitioner signed his plea agreement, the U.S. Attorneys gave notice that they were discontinuing the policy. *See United States v. Sentamu,* 212 F.3d 127, 129–30 (2d Cir.2000). Therefore, to obtain a downward departure under § 5K2.0 for consenting to deportation the petitioner is required to present "a colorable, nonfrivolous defense to deportation, such that the act of consenting to deportation carries with it unusual assistance to the administration of justice." *United States v. Galvez–Falconi,* 174 F.3d 255, 260 (2d Cir.1999). In this case, the petitioner is vigorously contesting deportation. Indeed, the counsel who was appointed to represent the petitioner in this case has, in the highest tradition of public service, represented the petitioner in his immigration proceedings on a pro bono basis. In any event, even if the petitioner had consented to deportation the petitioner has made no showing that he meets the requirements of *Galvez–Falconi.* The petitioner's motion for a downward departure based on his consent to deportation is therefore denied.

IX.

The petitioner also argues that the Government breached the cooperation agreement by not submitting a "warmer" § 5K1.1 letter. However, the Government satisfied its obligation when it filed the § 5K1.1 letter. The letter was sufficiently clear to get the petitioner a very substantial reduction in the potential sentence. The Court was fully aware of the defendant's substantial cooperation and departed downward to the sentence that the

Court found appropriate. The petitioner's contention that the Government breached the cooperation agreement is meritless.[1]

### Conclusion

For the reasons explained above, the petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate or set aside his conviction and sentence is denied. The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) because the petitioner has failed to make a substantial showing of the denial of a constitutional right. The Clerk of the Court is directed to enter a judgment dismissing the petition and to close this case.

**SO ORDERED.**

---

1. In his initial papers, the petitioner sought the appointment of counsel. The Court appointed counsel for him, and counsel diligently pursued those issues which counsel found to be worthy of pursuit. The Court has also considered the petitioner's pro se arguments with respect to the remaining issues. The petitioner also sought an evidentiary hearing, but the Court held several conferences with the parties to develop the issues, including affording the defendant the opportunity to speak. (*See* Transcript of Hearing dated July 21, 2003 ("7/21/03 Tr."), at 3–6.) No further submissions were sought, and there is no basis for any further hearings. (*See* 7/14/03 Tr. at 5–6; 7/21/03 Tr. at 6.)