**Mamadou CISSE, Petitioner,**

v.

**UNITED STATES of America Respondent.**

**No. 03 Civ. 4205(JGK).**

United States District Court, S.D. New York.

July 30, 2004.

## OPINION AND ORDER

KOELTL, District Judge.

Petitioner Mamadou Cisse ("Cisse") moves pro se under the All Writs Act, 28 U.S.C. § 1651, for a writ of error coram nobis to vacate a judgment of conviction imposed pursuant to his guilty plea for conspiracy to commit bank fraud in violation of 18 U.S.C. § 371. Cisse challenges his conviction because he now faces deportation to the Ivory Coast. The petitioner alleges that his guilty plea allocution was insufficient under Fed.R.Crim.P. 11 and

his sentencing hearing was insufficient under Fed.R.Crim.P. 32.[1] He also alleges ineffective assistance of counsel, in violation of the Sixth Amendment. He claims that these violations resulted in his decision to enter a plea of guilty and in his failure to attack the judgment timely on appeal or by a motion pursuant to 28 U.S.C. § 2255.

I

On October 31, 2000, the petitioner pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371. (See Presentence Investigation Report ("PSR") attached as Ex. C to Am. Pet. for a Writ of Error Coram Nobis ("Am.Pet.") dated Jan. 26, 2001 ¶¶ 10–11; Transcript of Plea Allocution of October 31, 2000 ("Plea Tr."), at 9–10, 21–22.) Cisse admitted that, as part of the conspiracy, he had stolen checks from his workplace at the Morgan Stanley Dean Witter mailroom in New York City, during the approximate period of September 1999 to February 2000. (See Plea Tr. at 18–20.) Cisse then passed the stolen checks to a co-conspirator who agreed to remit to the petitioner a portion of the proceeds from any checks that were successfully cashed and deposited. (See id.)

At the plea allocution, the Court thoroughly examined the petitioner in accordance with Fed.R.Crim.P. 11 before accepting his guilty plea. (See Plea Tr. at 3–22.) Cisse, under oath (id. at 3), acknowledged that he had signed and read the plea agreement, that he fully understood its terms, and that he was pleading guilty voluntarily and of his own free will. (Id. at 15–16, 22.) Cisse also declared that no one

1. Because the petitioner challenges his October 31, 2000 plea allocution and his March 31, 2001 sentencing hearing the Court relies on the 2001 Federal Rules of Criminal Procedure (which were unchanged from the 2000 version), and all citations to the Fed. R.Crim.P. are to the 2001 version.

had offered him any inducements or threatened or forced him to plead guilty or to enter into the plea agreement. (*Id.* at 16.) Cisse acknowledged that he was aware of the elements of the offense, the possible penalties for the offense, the constitutional rights he was waving, and that he would have no trial. (*Id.* at 5–18.)

The petitioner was represented from the time of his arrest through the plea allocution by Jonathan Bach, Esq., of the Federal Defender Division of the Legal Aid Society. (PSR at 1.) Cisse affirmed that he was satisfied with his attorney's representation and that he had discussed the terms of the agreement and the consequences of entering a guilty plea with Mr. Bach. (Plea Tr. at 4–5, 15–16.) After the petitioner explained that he was "not a citizen yet," the Court confirmed that the petitioner understood the "possible consequences" of a guilty plea, including that the adjudication pursuant to his guilty plea "may have other consequences for your status in the United States." (*Id.* at 13.) Cisse also indicated that under the plea agreement he had knowingly and voluntarily waived his right to appeal or "otherwise litigate under Title 28, United States Code, Section 2255 any sentence within or below the guideline sentencing range of 24 to 30 months." (*Id.* at 16–17.)

Because Mr. Bach had left the Legal Aid Society in January 2001, John Byrnes, Esq., also of the Federal Defender Division, represented the petitioner at the sentencing proceeding on March 23, 2001. (Transcript of Sentencing Hearing of March 23, 2001 ("Sent.Tr."), at 5.) Mr. Byrnes stated that he was capable of assuming the petitioner's case, and that he had reviewed the PSR with Cisse. (*Id.*) Mr. Byrnes added that the petitioner was unfortunately "jeopardizing his immigration status," and that Cisse knew he was going to jail. (*Id.* at 8.) Cisse confirmed that he had gone over the PSR with Mr. Byrnes and had no objections to the report. (*Id.* at 9.) The petitioner also declared that he understood that he had waived in the plea agreement his right to appeal the sentence. (*Id.* at 16.)

The Court imposed a sentence of twenty-four months imprisonment, followed by supervised release for a term of three years. (*Id.* at 13.) The Court also ordered restitution in the amount of $367,162.42 payable to the several banks that were victims of the fraudulent conduct. (*Id.* at 14.) Judgment was entered on April 5, 2001.

On June 1, 2001, Cisse was committed to the custody of the Bureau of Prisons ("BOP") to be imprisoned for a term of 24 months. (Second Am. Pet. for a Writ of Error Coram Nobis ("Second Am. Pet.") dated Aug. 5, 2003, at 2.) The petitioner was transferred on January 26, 2003 to the custody of the Bureau of Immigration and Customs Enforcement ("BICE") of the Department of Homeland Security. (*Id.* at 2–3.) While serving his term in federal prison pursuant to the conviction, the petitioner did not appeal or file a motion under 28 U.S.C. § 2255.

Because the petitioner had been convicted of an aggravated felony as defined by 8 U.S.C. § 1101(a)(43), he was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii). (*See generally* Notice of Intent to Issue a Final Administrative Removal Order ("Final Admin. Removal") dated Aug. 1, 2001 attached as Ex. A to Second Am. Pet.) On July 21, 2003, an immigration judge denied Cisse's request to withhold his pending removal. (Final Admin. Removal; Summary of Oral Decision of Immigration Judge dated July 21, 2003 attached as Ex. B to Second Am. Pet.) The petitioner is apparently now incarcerated in Berks County Prison, Leesport, Pennsylvania. (Pet'r's Reply Letter Br. in Resp. to Gov't Challenge ("Pet'r's Reply Br.") dated Apr. 29, 2004, at 13.)

Cisse filed his first petition for a writ of error coram nobis with the Pro Se Office of this Court on April 11, 2003,[2] and was given leave to amend by Chief Judge Mukasey to indicate whether the petitioner was still in custody pursuant to his federal sentence.[3] (Mot. for Coram Nobis dated Apr. 6, 2003, at 9); *Cisse v. United States,* 03 Civ. 4205, slip op. at 6–7 (S.D.N.Y. June 10, 2003). Chief Judge Mukasey again granted Cisse leave to amend his amended petition to offer sound reasons why Cisse had failed to seek earlier appropriate relief. (Am.Pet.); *Cisse v. United States,* 03 Civ. 4205, slip op. at 3 (S.D.N.Y. July 21, 2003). The petitioner's second amended petition for a writ of coram nobis is now before this Court.

## II

■ A writ of error coram nobis is available under the All Writs Act as a "remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *Fleming v. United States,* 146 F.3d 88, 89–90 (2d Cir.1998); *see also United States v. Mandanici,* 205 F.3d 519, 524 (2d Cir. 2000); *United States v. Foti,* No. 00 Cr. 320, 2001 WL 736777, at *2 (S.D.N.Y. June 29, 2001). The writ is "not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and

invalid." *Mandanici,* 205 F.3d at 524 (internal quotation marks omitted).

■ When considering petitions for a writ of error coram nobis, the court "must presume that the proceedings were correct and the burden of showing otherwise rests on the petitioner." *Mandanici,* 205 F.3d at 524. "[T]o obtain coram nobis relief a petitioner must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Fleming,* 146 F.3d at 90 (internal quotation marks omitted).

## III

The petitioner has failed to meet the first prong of the requirements for the writ of error coram nobis because he has not established that there are circumstances compelling vacating his conviction or that he was denied justice at his plea allocution and sentencing hearing.

### A

As his primary basis for relief under the first prong, the petitioner claims violations of Rule 11 plea requirements and Rule 32 sentencing requirements, as well as ineffective assistance of counsel. None of the claimed violations have any merit.

■ First, the petitioner argues that the Court failed to advise him of his right to appeal. There is no basis for that contention.[4] At the plea allocution, in accor-

---

2. The petition was dated April 6, 2003.

3. Although Cisse still claims that he is "in custody" as a result of his federal sentence because he is being held by BICE pending removal, he has proceeded with a petition for coram nobis relief and is not now "in custody" serving the federal sentence. (Second Am. Pet. at 3.)

4. Although the petitioner only cites an alleged violation of Rule 32(c)(5) with respect to the Court's alleged failure to inform him of the right to appeal, he also refers in his petition to the transcript of the plea allocution. (Second Am. Pet. at 5–6.) Thus, the Court will construe his claim as asserting errors under Rule 11 and Rule 32(c)(5) for alleged violations that occurred at the plea allocution and the sentencing hearing.

dance with Fed.R.Crim.P. 11(c)(6),[5] the Court carefully advised the petitioner of his waiver in the plea agreement of the right to appeal or otherwise litigate or challenge any sentence within or below the guideline sentencing range of 24 to 30 months. (*See* Plea Tr. at 16–17.) The petitioner confirmed that he understood he was waiving this right to appeal or otherwise challenge the sentence, and that he had done so both knowingly and voluntarily. (*Id.* at 17.) A district court has the discretion to rely on a defendant's sworn statements in open court because such statements carry a strong presumption of verity that cannot be overcome by conclusory allegations. *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *United States v. Hernandez,* 242 F.3d 110, 112–13 (2d Cir.2001); *Hernandez v. United States,* 280 F.Supp.2d 118, 122 (S.D.N.Y.2003).

Moreover, at the sentencing hearing, consistent with Fed.R.Crim.P. 32(c)(5),[6] the Court informed the petitioner of his normal right to appeal the sentence and the right to apply for leave to appeal in forma pauperis and noted that Cisse appeared to have waived this right. (Sent. Tr. at 15–16.) Counsel for both parties stated that they knew of no legal reason why the waiver was not effective. (*Id.* at 16.) After confirming the waiver with counsel and explaining the normal right to appeal to Cisse, the Court urged the petitioner to talk to his lawyer promptly about the waiver to ensure that Cisse was "fully advised of all of [the petitioner's] rights." (*Id.*) Cisse confirmed that he understood. (*Id.*) Thus, at both the plea allocution and the sentencing, the petitioner affirmed that he was fully advised of and understood his right to appeal his sentence and his waiver of that right.

■ Second, Cisse argues that the Court violated Fed.R.Crim.P. 11 by failing to advise him of the immigration consequences of his plea. This argument also has no merit. Contrary to Cisse's assertions, the Court of Appeals for the Second Circuit has not determined that failure to advise a defendant of the direct immigration consequences of a guilty plea constitutes a Rule 11 violation. *See United States v. Couto,* 311 F.3d 179, 190–91 (2d Cir.2002). The Court found rather that "an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable." *Couto,* 311 F.3d at 188. Although Cisse claims that, under *Couto,* a court is required to inform a defendant of the direct consequences of a guilty plea on his immigration status (Second Am. Pet. at 7), the Court of Appeals did not specifically decide that question. *See Couto,* 311 F.3d at 190–91. The Court of Appeals did note that the issue of whether a defendant had been informed of the direct immigration consequences of a plea "would seem an appropriate factor to guide the district courts' discretion in considering a defendant's attempt to withdraw a guilty plea." *Couto,* 311 F.3d at 190. In any event, this Court did inform the petitioner at the plea allocution of the "possible consequences" of a guilty plea, including consequences for his "status in the United States," which Cisse confirmed that he understood. (Plea Tr. at 12–13.) This followed Cisse's admission that he was "not a citizen yet." (*Id.*

---

5. Fed.R.Crim.P. 11(c)(6) required the Court, before accepting a guilty plea, to advise a defendant of and determine that the defendant understands "the term of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence."

6. Fed.R.Crim.P. 32(c)(5) provided in part that: "After imposing sentence in any case, the court must advise the defendant of any right to appeal the sentence, and the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in forma pauperis."

at 13.) Thus, the Court advised the petitioner of the immigration consequences of his plea and it is plain that the petitioner understood. Indeed, at the sentencing hearing, his counsel acknowledged that the petitioner was "jeopardizing his immigration status." (Sent. Tr. at 8.)

Finally, Cisse claims in his reply brief that the Court violated Fed.R.Crim.P. 11 by failing to advise him properly that he faced lifetime supervised release. (*See* Pet'r's Reply Br. at 8.) This argument also has no merit. The petitioner in fact was subject to a maximum term of supervised release of only three years, pursuant to 18 U.S.C. 3583(b)(2); the Court advised the petitioner of that fact; and the petitioner acknowledged that he understood that possible penalty. (*See* Plea Tr. at 11–12.) The petitioner was in fact sentenced to three years supervised release at the sentencing hearing. (Sent. Tr. at 11.)

## B

The petitioner next alleges that he received ineffective assistance of counsel at the plea allocution and sentencing hearing in violation of his Sixth Amendment rights. (Second Am. Pet. at 11.) He claims that counsel failed to explain fully the consequences of pleading guilty, convinced him to enter the plea agreement, and neglected to pursue and review with him all of his options before Cisse pleaded guilty.

A claim that a guilty plea was involuntary due to ineffective assistance of counsel must be evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (*Strickland* analysis applies in the context of guilty pleas); *Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001); *Hernandez*, 280 F.Supp.2d at 122. To prevail on a claim of ineffective assistance of counsel, the petitioner must show both (1) that his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) that counsel's deficient performance was prejudicial to the petitioner's case. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Bunkley v. Meachum*, 68 F.3d 1518, 1521 (2d Cir. 1995).

The petitioner cannot meet the first prong of the *Strickland* test merely by showing that his counsel employed poor strategy or made a wrong decision. Instead, the petitioner must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Indeed, there is a "strong presumption" that defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a defendant bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (citing *Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052).

The petitioner cannot satisfy the first prong of the *Strickland* test because the assistance rendered by his attorneys was objectively reasonable, and Cisse's allegations are refuted by his sworn statements at the plea allocution and sentencing hearing. Cisse's primary contention is that his counsel, in addition to the Court, failed to advise him that removal would be a direct consequence of a guilty plea. (Second Am. Pet. at 17.) The Court of Appeals, however, has not determined that an attorney's "failure to inform a defendant of the deportation consequences of a plea would by itself now be objectively unreasonable," limiting its ruling to "affir-

mative misrepresentation[s] by counsel as to the deportation consequences of a guilty plea." *Couto,* 311 F.3d at 188; *see also Castillo–Acevedo v. INS,* No. 02 Civ. 9623, 2003 WL 22416122, at \*4–\*5 (S.D.N.Y. Oct. 22, 2003) ("[W]hile counsel *should* advise their clients of the adverse immigration consequences of a guilty plea, controlling law does not deem the failure to do so actionable.").

The petitioner never argues that he was affirmatively misled by counsel, and nothing in the record suggests such a possibility. In fact, counsel's statements at the sentencing hearing in the presence of the petitioner indicated that the conviction would jeopardize the petitioner's immigration status. (Sent. Tr. at 8.) Furthermore, correspondence from Cisse's girlfriend that was referred to in the Pre–Sentence Report expressed her hopes that Cisse would not be deported and announced her intention to follow him to the Ivory Coast should he be deported. (PSR ¶ 47.) The petitioner acknowledged that he read the Pre–Sentence Report. (Sent. Tr. at 9.)

██ There is also no basis in the record to conclude, as the petitioner contends, that there was a viable defense in this case and that pleading guilty with credit for the acceptance of responsibility was not the wisest advice he could receive from his attorney, Mr. Bach. (Second Am. Pet. at 5, 11.) Cisse does not allege that his counsel coerced him but claims that he was "misinformed or misled" into pleading guilty "on the advice of his lawyer" when he could have prevailed at trial. (Second Am. Pet. at 5.) At the allocution, however, the petitioner asserted that he was voluntarily and knowingly pleading guilty, and he discussed in detail with the Court the criminal conduct that constituted his involvement in the conspiracy. (Plea Tr. at 18–20, 22.) He acknowledged that he knew that what he had done was "very wrong" and "very much" illegal. (Plea Tr. at 18–19.)

Mr. Bach's recognition at the allocution that he knew of no viable defense that would prevail at trial is confirmed by the petitioner's untenable claim that he could "build a case" through cross-examination of witnesses or by arguing that he stole out of fear of a co-conspirator. (Plea Tr. at 17; Second Am. Pet. at 5, 11.) Because the petitioner has failed to explain what viable defense was available in this case, Mr. Bach did not render ineffective assistance of counsel when he advised Cisse to plead guilty with credit for the acceptance of responsibility.

The petitioner also claims that Mr. Bach provided ineffective assistance of counsel because he failed to seek or discuss with Cisse a judicial recommendation against deportation (JRAD). (Second Am. Pet. at 13–15.) There was no error by counsel, however, because Congress eliminated the JRAD in the Immigration Act of 1990, well before Cisse's indictment in 2000. *See Couto,* 311 F.3d at 189.

Cisse's allegations of ineffective assistance of counsel with respect to his subsequent attorney, Mr. Byrnes, are also refuted by the petitioner's sworn statements at the sentencing hearing. His claim that Mr. Byrnes failed to review the PSR with him is directly contradicted by the record. (Second Am. Pet. at 11). At the sentencing hearing, both Mr. Byrnes and the petitioner affirmed that they had read the PSR and discussed it and had no objections. (Sent. Tr. at 4–5, 9.) The petitioner also makes passing objections to the amount of restitution imposed at his sentencing. (Second Am. Pet at 12.) However, Cisse offers no grounds to suggest that the Court did not correctly determine restitution based on the sum of stolen checks that constituted the actual loss, as listed in the PSR and established at the sentencing

hearing. (PSR ¶¶ 21–22; Sent. Tr. at 2–4.) The petitioner affirmed that he had reviewed the PSR and did not contest the determination of restitution at the sentencing. (Sent. Tr. at 9.)

Because the petitioner has failed to satisfy the first prong of the *Strickland* test, his claim of ineffective assistance of counsel at his plea allocution and sentencing hearing must be denied. Cisse cannot satisfy the first requirement for coram nobis relief because he has failed to demonstrate that there are circumstances to compel the Court to vacate his conviction to achieve justice.

## IV

■ The petitioner also has not offered sound reasons for his failure to seek appropriate earlier relief in accordance with the second requirement for a writ of error coram nobis. The petitioner did not file an appeal within ten days from the entry of judgment of his conviction on April 5, 2001, and his conviction became final on April 20, 2001, "the day after his time to appeal expired." *See* Fed. R.App. P. 4(b)(1)(A)(i); Fed. R.App. P. 26(a); *Wims v. United States,* 225 F.3d 186, 188 (2d Cir.2000) (citing Fed. R.App. P. 4(b)); *Cisse,* 03 Civ. 4205, slip op. at 5 (S.D.N.Y. June 10, 2003). Petitioner had one year from April 20, 2001 to file a timely motion pursuant to 28 U.S.C. § 2255. He did not file his first coram nobis motion until April, 2003, almost a year after the one-year statute of limitations for relief pursuant to § 2255 had expired on April 20, 2002. *See Cisse,* 03 Civ. 4205, slip op. at 5 (S.D.N.Y. June 10, 2003).[7]

Cisse has failed to provide any sound reasons why he did not raise these issues in a timely fashion on appeal or in accordance with the one-year period of limitations that applies to motions under 28 U.S.C. § 2255. The petitioner argues that he was confused about whether he had waived completely his right to appeal or litigate on any grounds or only his right to challenge his sentence on appeal or pursuant to § 2255. (Second Am. Pet. at 6.) The Court, however, confirmed that he understood the waiver and explicitly advised Cisse to discuss his rights with respect to appeal with his attorney after the sentencing. (Sent. Tr. at 16.) If Cisse was confused about the terms of his waiver, there is no reason he could not have explored his options and resolved this confusion within the one-year statute of limitations. To the extent the petitioner is concerned about the effect of his conviction on his immigration status, the Court advised the petitioner of that consequence and his defense counsel acknowledged immigration consequences at the sentencing hearing. (Plea Tr. at 12–13; Sent. Tr. at 8.) Cisse could have resolved any confusion over his waiver of the right to appeal within the time limit for a motion pursuant to 28 U.S.C § 2255. Thus, the petitioner has failed to offer sound reasons for his failure to seek earlier appropriate relief prior to filing this petition.

## CONCLUSION

For the reasons explained above, the petition for a writ of error coram nobis pursuant 28 U.S.C. § 1651 to vacate the petitioner's conviction is denied. The Clerk of the Court is directed to enter

---

**7.** The one year period is measured from the date that the petitioner gave the motion to prison officials for mailing. *See Houston v. Lack,* 487 U.S. 266, 270–71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Nelson v. Walker,* 121 F.3d 828, 832 n. 2 (2d Cir.1997); *Brooks v. Artuz,* 2000 WL 1532918, No. 97 Civ. 3300, at *2 (S.D.N.Y. Oct. 17, 2000). That date could not be earlier than April 6, 2003, the date of the petitioner's certificate of service by mail.

judgment dismissing the petition and closing this case.

**SO ORDERED.**